1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT FOR THE**

8

**EASTERN DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| E. & J. GALLO WINERY, a California corporation, | ) )  CV F 05-0101   AWI LJO |
| | ) |
| Plaintiff, | )  MEMORANDUM OPINION )  AND ORDER DENYING )  DEFENDANTS MOTION TO |
| v. | )  DISMISS PURSUANT TO )  RULE 12(b)(2); AND DENYING |
| ANDINA LICORES S.A., a corporation organized under the laws of Ecuador, | )  PLAINTIFF'S CROSS- )  MOTIONS FOR TRO, )  PRELIMINARY INJUNCTION, |
| Defendant | )  AND ISSUANCE OF LETTER )  ROGATORY |

10
11
12
13
14
15

16

**Documents #21, #26, and #36**

17
18

**INTRODUCTION**

19          This is a case that arises out of a distributorship contract between the parties wherein

20   Andina Licores S.A. ("Andina") agreed to be a distributor of certain products of E. &J. Gallo

21   Winery ("Gallo") in Ecuador.  In August of 2004, Andina commenced a civil proceeding in

22   the Second Civil Court of Guayaquil, Ecuador (the "Ecuador action") alleging Gallo

23   breached its distributorship contract with Andina.  On October 26, 2005, Gallo filed a suit

24   against Andina in the Superior Court of Stanislaus County for declaratory relief, abuse of

25   process, unfair competition, and breach of contract (the "California action").  The California

26   action was removed to this court by Andina on January 25, 2005.

27          In the instant motion, Andina moves for dismissal of the California action pursuant to

28   Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Gallo cross-moves for a Preliminary

Injunction to prevent Andina from pursuing the Ecuador action and requests that the court issue a letter rogatory to the court in Ecuador requesting their cooperation in enforcing the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Gallo alleges that in 1978 it entered into an agreement with Andina, then a limited liability company, to distribute two of Gallo's products in Ecuador.  In 1987 Andina changed its structure to become a corporation and updated its distributor agreement with Gallo to reflect the change.  Gallo contends the distributor agreement grants non-exclusive rights to distribute specified Gallo products.  Andina contends the distributor agreement grants exclusive rights.  The parties agree that the distributor agreement designated California law as governing and provided that the forum for any adjudication of issues arising under the contract would be either the Superior Court of Stanislaus County or this court.

According to Gallo's moving papers, in 1976 the then-military dictatorship of Ecuador issued Decree No. 1038-A, which, among other things, invalidated forum selection clauses in contracts, and altered the terms of contracts so that a party to a contract could not "terminate, impair, amend or refuse to renew" the contract except that just cause be proven before a competent (presumably Ecuadorian) judge.  Decree 1038-A remained in effect until 1997 when it was repealed by the Ecuadorian National Congress in a piece of legislation known as Law No. 22.  The parties do not dispute the existence of Decree 1038-A during the time both of the distributor agreements were executed, or is there any dispute as to the repeal of the Decree.  The parties dispute the effect of the repeal on the validity of forum selection clauses that were incorporated into contracts that were executed during the period of time Decree 1038-A was in effect.

Gallo contends the effect of the repeal was to render valid the previously invalidated terms of contracts, including forum selection clauses that were incorporated into contracts that were executed while Decree 1038-A was in effect.  Andina contends that those

2

provisions of contracts that were modified or prevented by Decree 1038-A remained modified or prevented after the repeal of the Decree.  In other words, Andina contends the effect of the repeal by Law 22 was not retroactive and Gallo contends the repeal had retroactive effect.

In 2004 a dispute arose between Andina and Gallo.  In an exchange of letters that occurred in April and May of 2004, Andina claimed exclusive distribution rights under the agreement and alleged that Gallo had breached the agreement by (1) selling its products directly to Ecuador's largest supermarket chain, Supermaxi; (2) by making late deliveries on three shipments; and (3) by charging higher prices to Andina.  Gallo refuted each of the three allegations by return letter to Andina, noting that under the terms of the distributor agreement Andina did not have sole distributorship rights and that any delays in shipment had been caused by Andina.

Andina filed the Ecuador action on August 11, 2004, alleging the same breaches of contract it alleged in the letters that were sent to Gallo.  In its motions for temporary restraining order (TRO) and preliminary injunction, Gallo alleges Andina, in bringing the action in Ecuadorian court invoked the provisions of Decree No. 1038-A.  In addition to the provisions of Decree 1038-A noted above, the Decree also allegedly provides a formula for the calculation of damages that multiplies the distributor's annual revenue derived from the distribution of a producers product times the total number of years the distribution contract has been in existence.  Using this formula, Andina claims a total of $75 million in damages in the Ecuador action.

According to Gallo's allegations, article 5 of Decree 1038-A provides for a drastically foreshortened "verbal summary trial," which compresses the time during which the defendant may respond into only eight days and compresses the time for production of evidence into only six days.  Gallo alleges no discovery is allowed under this provision, and there is no opportunity to examine or cross-examine witnesses.

3

Gallo also alleges that Andina willfully ignored Gallo's designation of counsel in Ecuador for purposes of notice and in bad faith moved for appointment of a guardian ad litem (*curador*) under Ecuadorian Civil Code Article 512.  Gallo alleges Andina could only have successfully petitioned for the appointment of a *curador* if Andina wrongfully represented to the court that it did not know the whereabouts of Gallo and Gallo failed to appoint a representative to receive service in Ecuador (which Gallo alleges they did do).  Gallo alleges that, because Andina mislead the Ecuadorian court into the appointment of the *curador* and because the *curador* failed to notify Gallo timely of the suit or of the limited time for response to Andina's complaint, Gallo was denied the opportunity to raise valid defenses to Andina's action.  Specifically, Gallo alleges that the appointed *curador*, a recent law school graduate with no practical experience, answered Andina's complaint omitting, among other things, the affirmative defense of the forum selection clause in ¶ 8 of the distributor contract.  Gallo retained its own counsel after it discovered what had happened.

The California action commenced in this court with the removal of the case from the Stanislaus Superior Court on January 24, 2005.  In the California action, Gallo requests declaratory judgment on the validity and enforceability of the terms of the distributorship agreement.  Gallo also alleges claims for abuse of process, unfair competition under California law, and breach of contract.  Andina filed a motion to dismiss for lack of personal jurisdiction on the same day the case was removed to this court.  Andina's motion to dismiss was denied without prejudice because Andina failed to properly notice the motion.  Gallo filed a motion to remand on February 23, 2005, which was subsequently denied on April 15, 2005.  Andina filed its second motion to dismiss on April 28, 2005.  Gallo filed its opposition to Andina's motion and a cross-motion for preliminary injunction and letter rogatory on May 23, 2005.  Gallo filed the instant motion for TRO two days later, on May 25, 2005.  Apparently, the motivating factor behind Gallo's motion for TRO was their receipt of notification that the Second Civil Court in Guayaquil had requested final argument from the

4

1    parties in that action, from which Gallo infers that a judgment is possibly imminent in the

2    Ecuador action.

3         In letter communications to Gallo and copied to the court, Andina initially announced

4    it will not be present at oral argument on Gallo's TRO request because it does not wish to

5    risk waiver of general jurisdiction by making an appearance in court.  The letter generally

6    communicated Andina's contentions with respect to this motion.  Subsequently, On June 1,

7    2005, Andina filed notice of special appearance to oppose Gallo's motion for summary

8    judgment and filed its memorandum in opposition to Gallo's motion.

9         The hearing on Andina's motion to dismiss and on Gallo's cross-motion for

10   preliminary injunction and letter rogatory was held on June 6, 2005.  Both parties were

11   represented by counsel.

12                                **LEGAL STANDARD**

13        The purpose in issuing a temporary restraining order is to preserve the <u>status</u> <u>quo</u> for a

14   short time pending a fuller hearing.  Case law contains limited discussion of the standards for

15   issuing a temporary restraining order due to the fact that very few such orders can be

16   appealed prior to the hearing on a preliminary injunction.  It is apparent however, that

17   requests for temporary restraining orders which are not <u>ex parte</u> and without notice are

18   governed by the same general standards that govern issuance of a preliminary injunction.

19   <u>See</u>, <u>Motor Vehicle Board of Cal. v. Orrin W. Fox</u>, 434 U.S. 1345, 1347 n. 2, (1977); <u>Los</u>

20   <u>Angeles Unified School District v. United States District Court</u>, 650 F.2d 1004, 1008 (9th

21   Cir. 1981); <u>Century Time Ltd. v. Interchron</u>, 729 F. Supp. 366, 368 (S.D.N.Y. 1990).  Since

22   the court has deemed Andina's letter correspondence with Gallo and the court as opposition

23   to Gallo's motion for TRO, and because Andina subsequently submitted (albeit belatedly) a

24   formal brief in opposition, the court finds Gallo's request is not *ex parte* and will therefore

25   apply standards appropriate to issuance of a preliminary injunction.

26        The legal principles applicable to a request for preliminary injunctive relief are well

27

28                                       5

1  established.  To prevail, the moving party must show either: "(1) a likelihood of success on

2  the merits and the possibility of irreparable injury; or (2) that serious questions going to the

3  merits were raised and the balance of hardships tips sharply in its favor."  Walczak v. EPL

4  Prolong, Inc., 198 F.3d 725, 731 (9th Cir.1999); Oakland Tribune, Inc. v. Chronicle

5  Publishing Company, Inc., 762 F.2d 1374, 1376 (9th Cir. 1985).  The two formulations

6  represent two points on a sliding scale with the focal point being the degree of irreparable

7  injury shown.  Walczak, 198 F.3d at 731;  Oakland Tribune, 762 F.2d at 1376.  The greater

8  the relative hardship to [the moving party], the less probability of success must be shown.

9  Walczak, 198 F.3d at 731.   "Under either formulation of the test, plaintiff must demonstrate

10  that there exists a significant threat of irreparable injury." Oakland Tribune, 762 F.2d at 1376.

11   In the absence of a significant showing of irreparability, the court need not reach the issue of

12  likelihood of success on the merits.  Id.

13          It is well established in the Ninth Circuit that federal courts have the power to enjoin

14  those subject to their personal jurisdiction from proceeding with an action in a court of

15  foreign jurisdiction.  Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League, 652 F.2d

16  852, 855 (9th Cir. 1981); Quaak v. Klynveld Peat Marwick Goerdeler Bedrijfsrevisoren, 361

17  F.3d 11, 16 (1st Cir. 2004).  "[T]he power to enjoin should be 'used sparingly.' [Citation.]

18  'The issue is not one of jurisdiction, but one . . . of comity.' [Citation.]" Seattle Totems, 652

19  F.2d at 855.

## DISCUSSION

### I. Jurisdiction and Andina's Motion to Dismiss

22          Central to Andina's defense in Gallo's underlying action in this court and prominent

23  in their opposition to Gallo's request for an antisuit injunction, is their claim this court lacks

24  personal jurisdiction over them.  Gallo contends Andina consented to personal jurisdiction.

25  Andina contends there was no consent because the laws of Ecuador rendered the forum

26  selection clause unenforceable.  There is no doubt that consent is a traditional basis for the

1   assertion of personal jurisdiction over a foreign party.  <u>Carnival Cruise Lines v. Shute</u>, 499

2   U.S. 585 (1991).  Therefore, the primary inquiry is whether the forum selection clause in the

3   Distributorship Contract is enforceable.

4      The Agreement of Distributorship provides, in pertinent part:

5     8.  This agreement is entered into under the laws of the State of
      California and shall be and shall be construed thereunder, and
6         any cause of action arising between the parties, whether under
      this agreement or otherwise, shall be brought only in a court
7         having jurisdiction and venue at the home office of [Gallo].
      [Gallo] and Distributor each hereby designate CT Corporation
8         System, 235 Montgomery Street, San Francisco, California
      94104 as agent for service of process in any such cause of
9         action.

10     In its opposition to Gallo's motion for temporary injunction, Andina makes no actual

11  argument for lack of personal jurisdiction, but refers to their argument in their motion for

12  dismissal of Gallo's action pursuant to FRCP 12(b)(2).  With respect to the issue of whether

13  the forum selection clause confers personal jurisdiction, Andina contends in their motion to

14  dismiss that personal jurisdiction is not conferred primarily by the forum selection clause

15  because the forum selection clause was invalid at the time the contract was executed in

16  Ecuador and remains invalid as a matter of Ecuadorian law to the present time.  Gallo

17  vigorously contests this representation of controlling Ecuadorian law.  The remainder of

18  Andina's argument with regard to their consent to jurisdiction in the United States is their

19  claim that the forum selection clause is part of an "adhesion contract" and is unenforceable

20  because the clause places an unconscionable burden on Andina.  The latter two argument are

21  not compelling.

22     While the contract is a simple, preprinted, two page fill-in-the-blanks type contract.

23  Andina presents no compelling argument that a contract is an adhesion contract simply

24  because its language is dictated by Gallo and is included in their standard, pre-printed

25  distributorship contracts.  The forums selection clause has been used widely by Gallo and is

26  an integral part of their strategy of focusing their legal actions at their home office.  Adhesion

27

28                7

contracts are normally associated with consumer items, such as computer programs, and are not normally associated with ongoing service relationships such as Gallo's distributorship agreement with Andina.  The court concludes the Distributorship contract is not an adhesion contract.

The forum selection clause in the Distributorship Agreement is also not unconscionable.  Andina's main argument in this regard is that Andina is small and Gallo is large.  While this is true, this is not a recognized reason for the invalidation of forum selection clauses.  As Andina points out, Gallo sells its products through distributors on every continent in the world except Africa and Antarctica.  The invalidation of the forum selection clause on the ground Andina proposes would have the effect of invalidating the forum selection clauses in essentially all Gallo's distributorship agreements and force upon Gallo the unconscionable burden of litigating issues that arise under its distributorship agreements in every corner and country of the world.  The effect of invalidation of the forum selection clause would impose a relatively greater burden on Gallo than on Andina.

This leaves the issue of whether forum selection clauses generally, and this one in particular, are currently enforceable under Ecuadorian law.  In terms of Andina's motion to dismiss, Andina has merely asserted the applicability of Decree 1038-A to invalidate the forum selection clause without really addressing Gallo's contention the decree was subsequently repealed and is no longer in force.  To avoid dismissal for lack of personal jurisdiction under Rule 12(b)(2), Gallo need only make a prima facie showing of personal jurisdiction.  Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir.1987).   As Gallo has pointed out, a forum selection clause in a written agreement is prima facie evidence that personal jurisdiction has been established by consent.  Kevlin Services v. Lexington State Bank, 46 F.3d 13, 15 (5th Cir 1995).  Given the presumption of validity that is courts accord forum selection clauses, Andina has not, at the present time established that the forum selection clauses is not enforceable and that personal jurisdiction has not been consented to.

8

1   The court need not address the other bases of personal jurisdiction at this point.

2   Andina has failed to present a compelling argument that the forum selection clause, which is

3   presumed valid, is not enforceable in Ecuador.  The forum selection clause may not be held

4   invalid on any of the other equitable grounds Andina asserts.  By consenting to the clause in

5   the Distributorship Agreement, Andina consented to personal jurisdiction in a court having

6   Venue at Gallo's home office in Modesto, California.

7   **II. Gallo's Motion for Preliminary (Antisuit) Injunction**

8         The court begins by noting there is a division of opinion between the circuits as to the

9   proper standard to employ in determining the propriety of an antisuit injunction.  See Quaak,

10  361 F.3d at 17 (discussing the more "permissive" approach of the Fifth and Ninth Circuits

11  and the more "restrictive" approach of the Second, Third, Sixth and D.C. Circuits).  In the

12  Ninth and Fifth Circuits, the district court does not abuse its discretion in issuing an antisuit

13  injunction "when it has determined 'that allowing simultaneous prosecution of the same

14  action in a foreign forum thousands of miles away would result in "inequitable hardship" and

15  "frustrate and delay the speedy determination of the cause."' [Citation.]"  Kaepa, Inc. v.

16  Achilles Corp., 76 F.3d 624, 627 (5th Cir. 1996);  Seattle Totems, 652 F.2d at 855.  The

17  Kaepa court noted the application of traditional equitable factors to determine whether

18  simultaneous prosecution in the foreign court would amount to an "inequitable hardship."

19  Kaepa, 76 F.3d at 627 n.9.  The equitable factors employed in Ninth Circuit cases assess

20  whether the foreign litigation "would: (1) frustrate a policy of the forum issuing the

21  injunction, (2) be vexatious or oppressive, (3) threaten the issuing court's in rem or quasi in

22  rem jurisdiction; or (4) prejudice other equitable considerations."  Seattle Totems, 652 F.2d at

23  855 (citing In re Unterweser Reederei, Gmbh, 296 F.Supp. 733, 735-736 (M.D. Fla. 1969)).

24        *A.  Considerations of Comity*

25        Courts in circuits employing the more restrictive analysis for the issuance of antisuit

26  injunctions place relatively greater emphasis on the principle of comity.  See, e.g. Gau Shan

27

28                                        9

Co. Ltd. v. Bankers Trust Co., 956 F.2d 1349, 1354 (6th Cir. 1992) ("Comity dictates that foreign antisuit injunctions be issued sparingly and only in the rarest of cases."). Although some courts in circuits employing the more restrictive test have opined that the Ninth Circuit test requires only that the foreign litigation duplicate the parties and issues in the home forum, see, e.g. Laker Airways, Ltd. v. Sabena Airlines, 731 F.2d 909, 928 (D.C. Cir. 1984), that opinion overstates the holdings in Fifth and Ninth Circuit cases. Both the Seattle Totems and Kaepa courts recognized that considerations of comity play a role in the determination of the appropriateness of antisuit injunctions. Seattle Totems, 652 F.2d at 855; Kaepa, 76 F.3d at 627 (although "the standard espoused in Unterweser and [Bethell v. Peace, 441 F.2d 495 (5th Cir. 1971)] focuses on the potentially vexatious nature of foreign litigation, it by no means excludes the consideration of principles of comity"). Similarly, other courts using the more restrictive standard have observed that considerations of comity remain part of the determination in antisuit injunctions in the Fifth and Ninth Circuits. Quaak, 361 F.3d at 17.

In the context of parallel actions within the United States, the mirror image issues of antisuit injunction and abstention are regulated primarily by the intertwined concepts of comity and federalism. See Younger v. Harris, 401 U.S. 37, 44 (1971) (describing "comity" as proper federal respect for state functions within a federal system). Outside the jurisdiction of the United States where federalism is not a consideration, the same general principles of comity are applied with respect to parallel proceedings in a foreign court. See AAR International, Inc. v. Nimelias Enter. Inc., 250 F.3d 510, 518 (7 Cir. 2001) (applying principle of comity to issue of abstention under Colorado River doctrine). In the context of parallel actions in domestic and foreign jurisdictions, comity has been defined variously as "a kind of 'golden rule' which commands respect for foreign law, Access Telecom, Inc. v. MCI Telecommunications Corp., 197 F.3d 694, 708 (5th Cir. 1999), or as a "blend of courtesy and expedience." Medtronic, Inc. v. Catalyst Research Corp., 518 F.Supp. 946, 955 (D. Minn. 1981).

Although comity is a principle that evades precise definition, it clearly implicates two concerns. The first concern is the relative authority of the foreign and domestic courts to speak to the issue raised by the action. The acts of foreign sovereigns taken within their own jurisdiction is deemed valid. W.S. Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp., Int'l, 493 U.S. 400, 409 (1990). In the context of contract disputes, for example, concerns of comity weigh heavily where a contract provision that is legal in the United States, is not legal in the country where the contract is to be primarily performed. See, e.g., Access Telecom, 197F.3d at 708 (a contract legal in the U.S. but illegal in Mexico raises concerns of comity). The second concern is the investment of time and resources invested by the foreign court in the resolution of the matter. Thus, the avoidance of interference with an action that was previously commenced in a foreign jurisdiction implicates concerns of comity. Medtronic, 518 F.Supp. at 954.

Because this case raises concerns about both non-interference in cases that have been previously commenced in foreign courts and of the relative competence of this court and the Ecuadorian court to decide the underlying issues, the principle of comity looms larger in this case than in the Fifth and Ninth Circuit cases that have place relatively little emphasis on the principle.

In this case, unlike the factual situations in Seattle Totems, Kaepa, and Unterweser, the foreign forum is where the underlying dispute was first filed. In Seattle Totems, Kaepa, and Unterweser the issue of comity was relatively less important because the foreign actions were, in each case, filed significantly later than the case filed in the home forum. In contrast, in this case the action was filed several months earlier in the foreign forum, but the instant California action was not filed until the Ecuadorian case was nearing a point of completion. What Gallo is essentially asking this court to do is bring the Ecuadorian action to a halt at a point where the legal process has nearly run its course so that Gallo can litigate its claims in what it perceives to be a more favorable forum. The intrusion into the sovereignty of the

Ecuadorian court is substantially greater here, where the Ecuadorian court has allegedly progressed to the final phase of its proceeding.

The district court cases Gallo relies heavily upon, <u>Sun World, Inc. v. Olivarria</u>, 804 F.Supp. 1264 E.D. Cal. 1992), and <u>Farrell Lines v. Columbus Cello-Poly Corp.</u>, 32 F.Supp. 2d 118(S.D. N.Y. 1997), add nothing to the analysis.  In both cases the United States court that eventually issued the antisuit injunction was the court where the action that was the subject of the foreign suit was first filed.  The analysis in these cases is otherwise not different from the appellate cases cited.

Of the cases relied upon by Gallo, this court can find only one case, <u>Bethell v. Peace</u>, 441 F.2d 495 (5th Cir. 1971), where district court granted an antisuit injunction to prevent a party from prosecuting a suit in the first-filed forum.  In <u>Bethel</u>, the action was first filed in the Bahamas in accordance with a forum selection clause in the contract that gave rise to the dispute.  In <u>Bethel</u>, however, the contract in question was previously found to have been fraudulent and the complaint filed in the Bahamian court was found to have been filed for the purpose of furthering a fraudulent real estate scheme.  In addition, the court in <u>Bethel</u> relied on the fact that all of the parties in the second-filed Florida action (including the plaintiff in the Bahamian action) were Florida citizens.  The facts of <u>Bethel</u> are rather convoluted but it is clear that the outcome of that case turned on the finding of a fraudulent contract and on the common citizen ship of all the parties in the forum issuing the antisuit injunction.  These facts distinguish <u>Bethel</u> from the case at bar.

With respect to the relative abilities of the U.S. court and the Ecuadorian court to decide the underlying controversy in the case, it is evident the Ecuadorian court is more competent to decide the key issue; that is, whether the provisions of Decree No. 1038-A apply or not.  According to Gallo's allegations, the Decree No. 1038-A is central to the Ecuador action.  Andina has allegedly relied on the "summary verbal trial" procedure that is authorized by that decree and relies on the decree to invalidate the forum selection clause of

the contract, among other things.  Gallo alleges the decree is invalid, having been repealed by Ecuadorian legislature.  The court admits to more than just a little puzzlement at how a court can employ a judicial process that is authorized by an enactment that has been invalidated several years in the past.  Either Decree No. 1038-A has been invalidated and the effect of the invalidation is retroactive under Ecuadorian law, or it has not been invalidated or the effect of any invalidation is not retroactive.  It is certain that the Ecuadorian court is competent to decide this key underlying issues and this court is not.

The court concludes the principle of comity is implicated on the facts of this case to a greater extent that other Fifth and Ninth Circuit cases relied upon by Gallo and that considerations of comity weigh in favor of non-interference in the Ecuador action.

### A.  "Inequitable Hardship"

The court next considers whether Gallo would suffer an "inequitable hardship" if an antisuit injunction did not issue.  Gallo contends that the facts of this case implicate three of the four factors in Unterwesser.  However, when the court considers the three Unterweser Gallo contends are implicated in this case, the court cannot conclude Gallo suffers an inequitable hardship if the injunction does not issue.

### 1. Frustration of a Policy of the Court

The first Unterwesser factor is whether a policy of the court will be frustrated if injunction does not issue.  Gallo contends the Ecuador action will frustrate the policy of the court to enforce contractually established forum selection clauses and to assure the due process rights of its citizens.  Gallo is unpersuasive on both points.

As the court in Seattle Totems pointed out, antisuit injunctions invoke issues of comity, not jurisdiction.  Forum selection clauses implicate the jurisdictionally related issues of venue or forum non conveniens, but not issues of comity.  The fact there exists a forum selection clause does not prohibit a party from filing a suit either in the United States or abroad in a court not designated by the forum selection clause.  While courts having

jurisdiction in a particular case will give effect to forum selection clauses where issue of proper venue are raised, the cases cited by Gallo do not support the contention that enforcement of a forum selection implicates a policy so compelling as to justify the encroachment of one court on the jurisdiction of another. The remedy for a party who is called to defend a complaint in a forum other than the one designated by the forum selection clause is by petition to the court where the action was brought for change of venue. So far as this court is aware, there is no support for the proposition that a party seeking to enforce a forum selection clause should do so by seeking an injunction in the court designated by the forum selection clause rather than by petition for change of venue in the first-filed forum.

While this court has a strong policy to preserve the due process rights of parties within its jurisdiction, Gallo presents no authority for the proposition this court has authority to assure the preservation of rights in foreign jurisdictions where parties may place themselves through contractual arrangements. While procedures in foreign courts may potentially amount to due process violations from the standpoint of American courts and district courts in particular, courts in this country are not empowered to act as guarantors of due process in foreign jurisdictions where United States citizen companies may find themselves litigating. Here again, comity looms large in the analysis. While the proceeding before the Ecuadorian court may violate our notions of due process, and may be based on a decree that has been invalidated, considerations of comity should prompt us to allow the foreign jurisdiction to make its own determinations concerning the fairness and validity of the proceeding before it.

Further, the underlying policy at play here is the parties' freedom to contract. Although the facts are not complete here, the court assumes Gallo mailed the form distributorship contract to Ecuador where it was signed and returned. Gallo is no stranger to contracting across state and national boundaries and is presumed to have knowledge of the laws of foreign jurisdictions that exist at the time of contract execution that could modify

14

provisions of contracts. In short, the court must assume Gallo knew what it was doing when it initially signed, and then later renewed the distributorship contract, and that it did so voluntarily, understanding that the laws of the distributor's county could have an effect on the enforceability of the contract's provisions.

### 2. *Vexatious or Oppressive*

Second, the Ecuador action is not vexatious or oppressive in the sense contemplated by Unterweser or Seattle Totems. In those cases, the defendants in the first-filed cases filed suit in distant jurisdictions to litigate the same issues that were already under litigation in the home forum. The foreign cases were filed for the purpose of derailing or impeding the plaintiff's ability to litigate the claims in the first-filed action. That is not the case here. As previously discussed, Andina filed first in Ecuador, and Gallo did not file this case until several months later. In addition, Gallo's request to restrain Andina's participation in the first-filed Ecuadorian case was not filed because of difficulties caused by the foreign case in Gallo's prosecution of this case, it was filed solely because the foreign case is coming to a close and Gallo wants to forestall the issuance of a possibly adverse judgment. The fact that the Ecuadorian action is coming to a conclusion and Gallo has waited until the end of the case to request an injunction argues strongly the Ecuador action is not oppressive or vexatious within the meaning of governing case authority.

In the previously discussed case of Bethell v. Peace, the only case cited by the parties where the court found the first-filed action was vexatious, the finding of vexatiousness was based on the court prior finding that the filing of the first complaint in the Bahamas was an integral part of a scheme to defraud. Presumably, the idea in Bethel was that the defrauding party filed a claim in the Bahamas on claims that the plaintiff in the Bahamian case knew would be the mirror image of those that would inevitably be filed in Florida by the aggrieved victims of the fraudulent scheme. The idea was thus to file preemptively in order to frustrate the litigation of the case in a forum that was plainly more convenient to all parties. There is

no such finding of fraudulent intent in the present case, and the court has no basis upon which it could conclude the action for breach in Ecuador was filed to frustrate the litigation of issues that were inevitably going to be raised by Gallo in this forum.

In their motion for temporary injunction and in their reply brief supporting the motion, Gallo relies heavily on the district court cases of <u>Sun World, Inc. v. Olivarria</u>, 804 F.Supp. 1264 E.D. Cal. 1992), and <u>Farrell Lines v. Columbus Cello-Poly Corp.</u>, 32 F.Supp. 2d 118(S.D. N.Y. 1997).  These cases add nothing to the analysis.  In both cases the United States court that eventually issued the antisuit injunction was the court where the action that was the subject of the foreign suit was first filed.  The analysis in these cases is otherwise not different from the appellate cases cited.

### 3.  Other Equitable Considerations

Gallo argues that there are several "other equitable considerations will be prejudiced" within the meaning of the fourth <u>Unterweser</u> factor.  Gallo points primarily to the lack of due process in the Ecuador action that was exploited to Gallo's detriment such that Gallo was unable to raise valid defenses or conduct meaningful discovery.  Gallo also points out that information relating to Gallo's prices, shipments and other relevant matters is located in Modesto.

Assuming the validity of Gallo's allegations concerning the civil procedure in the Ecuador action, the court agrees that Gallo could possibly be subject to a civil procedure that can best be described as a "kangaroo court."  The result is not as prejudicial as Gallo contends, however.

First, as discussed previously, concerns of comity favor non-interference by this court in the Ecuadorian action.  At its core, the Ecuadorian action is a dispute as to whether the distributorship agreement makes Andina the exclusive or non-exclusive distributor of the products sold by Gallo.  In this regard the contract speaks for itself and this court must assume the Ecuadorian court can discern the meaning of "non-exclusive distributor" as well

16

as this court can.  Thus damage to Gallo as resulting from an adverse judgment seems somewhat remote or speculative given the apparent straightforwardness of the terms of the contract.  Further, to the extent Gallo is subject to a legal process that fails to conform to current Ecuadorian law or to considerations of fundamental fairness, the principle of comity dictates the Ecuadorian court should be presumed able to assure the rights of parties before that court.  This court cannot presume the Ecuadorian court incapable of fair proceedings.

However, to the extent Gallo may be subject to a judgment for damages on the scale alleged by Gallo, if the judgment is acquired by gross abrogation of due process rights, it would clearly be unenforceable in this country.  In light of the alleged glaring due process shortcomings in the Ecuador action, this court would be compelled to find the Ecuadorian court was not a court of competent jurisdiction and the issues adjudicated in that court would not have preclusive effect on issues before this court.  See Rein v. Providian Financial Corp., 270 F.3d 895, 899 (9th Cir. 2001) (claim preclusion is appropriate where judgment in prior adjudication rendered by court of competent jurisdiction).  Thus, whatever impediments Gallo might suffer as a result of a judgment in the Ecuador action would only apply within the jurisdiction of the Ecuadorian court, whose jurisdiction and processes this court has no power to alter or direct.

The issue of records and witnesses does not tip strongly in favor of Gallo either.  The facts presented tend to indicate the Ecuadorian action implicates Andina's records and witnesses to about the same extent the action in this court would.  There is nothing in the facts presented that established that the burdens of prosecution of all the issues in this case would weigh any heavier on Gallo in Ecuador that it would on Andina in this court.

### 4. Imminent Irreparable Harm

Gallo contends the traditional requirements of injunctive relief are satisfied because Gallo is in imminent danger of suffering irreparable harm as a result of the impending judgment in the Ecuadorian court.  The allegation of imminent irreparable harm, however,

17

requires this court accept the notion that the Ecuadorian court is incapable of contemplating Gallo's allegations of fundamental unfairness resulting from Andina's alleged bad-faith manipulation of the proceedings. Implicit in the concept of comity is the notion that foreign courts are not fundamentally corrupt and are capable of rendering sound judgment. The concept of comity, in other words, requires that this court, absent some affirmative showing of incompetence of the Ecuadorian court, is capable of rendering a decision that will not impair Gallo's fundamental rights. In light of that notion, this court cannot find imminent and irreparable harm based solely on the fact a cause will be tried in a foreign court.

### B. Frustration and Delay of Proceedings

What has been hinted at by Andina, but never directly addressed by the parties is the fact that the vitality of the California action ultimately depends on the willingness of Andina to submit to jurisdiction in this court. This court can find there is jurisdiction over Andina on the basis of Andina's consent, but this court cannot enforce its judgments on Ecuadorian nationals in Ecuador or in Ecuadorian courts any more than a court in Ecuador could enforce its judgements here on American nationals. Stated another way, even if the facts of this case warranted an antisuit injunction, this court is not aware of any means by which the injunction could be enforced.

Ultimately, Andina's willingness to submit to the jurisdiction of this court is going to depend on whether the Ecuadorian court finds the protectionist provisions of Decree 1038-A are applicable to the distributorship contract. As previously discussed, this court is not empowered to make a decision on the applicability of the protectionist provisions of Decree 1038-A that would be enforceable in Ecuador. With respect to the enforceability of the forum selection clause, Gallo argues that Decree 1038-A was repealed and the repeal was retroactive. Gallo does not argue that a foreign jurisdiction may not make and enforce protectionist laws that invalidate forum selection clauses. If the Ecuadorian court finds the provisions of the contract are valid in light of the repeal of Decree 1038-A, then Andina will

be required to come to this court in order to settle its grievances with Gallo.  If, on the other hand, the Ecuadorian court decides the protectionist provisions of Decree 1038-A are applicable to contracts that were executed while that decree was in effect, there is nothing this court can do to invalidate that decision and Gallo will have to decide whether it wants to continue doing business under the conditions imposed by the decree.  Either way, it is the Ecuadorian court that is a position of authority with respect to the laws of that nation and proceedings in this court will depend, to a great degree on proceedings in the Ecuadorian court that this court is without power to influence.

It is clear from the above discussion that the impending decision of the court in the Ecuador action will not frustrate or delay the speedy determination of the cause before this court.  If anything, the decision of the Ecuadorian court has the potential to make the outcome of the issues pending in this case clearer, or, at worst, the outcome of the Ecuador action will have little effect on the outcome of this case.  It does Gallo little good for this court to rule the forum selection clause valid if the Ecuadorian court rules it invalid as a result of the continued applicability of Decree No. 1038-A.

In addition, the case filed in this court by Gallo is not the mirror image of the case filed in Ecuador by Andina.  Essentially Gallo, in the California action, is suing Andina for breaching the distributorship contract by suing Gallo in the Ecuadorian action.  The Ecuadorian case is essentially a complaint for damages arising out of the same contract but from different alleged acts.  In Seattle Totems, Kaepa, and Unterweser as well as in Bethel, the antisuit injunction was issued to prevent litigation in a suit that raised identical issues as the suit in the first filed forum.  Thus, even if the standard for issuance of an antisuit injunction in the Ninth Circuit abandoned the issue of comity entirely and required only that the foreign litigation duplicate the parties and issues in the home forum, Laker Airways, 731 F.2d at 928, Gallo's action in this forum would not fulfil that requirement.

It does not matter that, as Gallo alleges, Andina would be required to bring their

19

claims in this court as compulsory counterclaims.  The point is the identity of claims requirement exists to satisfy the requirement that the foreign action be for the purpose of "frustrat[ing] and delay[ing] the speedy determination of the cause."' [Citation.]" Kaepa, Inc., 76 F.3d at 627.  In the present context, the purpose of the Ecuadorian action is not to prevent timely resolution of the claims in this court; rather, the action in this court is for the purpose of preventing timely resolution of the issues in the Ecuadorian court.  This court may not now enjoin that action merely because Gallo now finds themselves in an unfavorable situation.

On the basis of the consideration of both principles of comity and equity, the court finds Gallo has failed to assert reasons sufficient to support is request for TRO or injunction of Andina's action in Ecuador.


THEREFORE, in consideration of the foregoing, it is HEREBY ORDERED that Andina's motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure is hereby DENIED.  Gallo's motion for preliminary Injunction or TRO is also DENIED.




IT IS SO ORDERED.

**Dated:    June 24, 2005        **            **        /s/ Anthony W. Ishii        **
h2ehf                                            UNITED STATES DISTRICT JUDGE