IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E. & J. GALLO WINERY, | CASE NO. CV-F-05-0101 AWI LJO |
| Plaintiff, | **ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND PLAINTIFF'S MOTION TO EXTEND DEPOSITIONS** |
| vs. | (Docs. 75, 78.) |
| ANDINA LICORES, S.A., | |
| Defendant. | |

## INTRODUCTION

In this dispute over distribution of alcoholic beverages in Ecuador, defendant Andina Licores, S.A. ("Andina"), an Ecuadoran corporation, seeks a protective order to prevent the San Francisco depositions set by plaintiff E. & J. Gallo Winery ("Gallo") of Andina officers and Ecuadoran citizens Andres Naranjo ("Mr. Naranjo") and Ivan Cevallos Cordova ("Mr. Cevallos") and to limit each deposition to seven hours. Andina seeks to conduct Mr. Naranjo and Mr. Cevallos' respective depositions in San Francisco for up to 14 hours due to use of interpreters, among other things.

This Court considered Andina's protective order motion and Gallo's motion to extend depositions on the record and without the January 6, 2006 hearing or oral argument. *See* Local Rule 78-230(h). For the reasons discussed below, this Court:

    1.    DENIES Andina's motion for protective order;

    2.    ORDERS Mr. Naranjo and Mr. Cevallos to appear for their depositions in San Francisco

1                as set by Gallo on January 17 and 19, 2005;

2      3.      ORDERS Gallo to pay all of Mr. Naranjo and Mr. Cevallos' travel and lodging expenses to come and stay in San Francisco and to return to Ecuador; and

4      4.      GRANTS Gallo's motion to extend Mr. Naranjo and Mr. Cevallos' respective depositions to 14 hours.

## BACKGROUND

### The Parties' Actions

Gallo is a Modesto family-owned and operated winery and producer and marketer of wine and wine-based spirits. Andina is an Ecuadoran distributor of alcoholic beverages. Mr. Naranjo is Andina's president, and Mr. Cevallos is Andina's general manager.

In 1987, Andina entered into a distributorship agreement with Gallo to act as Gallo's non-exclusive distributor in Ecuador.[1] The distributorship agreement's forum selection clause provides that "any cause of action arising between the parties, whether under the agreement, or otherwise, shall be brought only in a court having jurisdiction and venue" at Gallo's home office, which Gallo contends is Stanislaus County Superior Court or this Court.

On August 11, 2004, Andina filed an Ecuadoran action against Gallo to claim that it is Gallo's exclusive Ecuadoran distributor and that Gallo breached the distributorship agreement by making three late deliveries, charging higher prices, and selling directly to an Ecuadoran supermarket chain. Gallo contends that Andina used the Ecuadoran action to take advantage of now repealed Ecuadoran procedures to invoke an "expedited summary verbal trial" and to claim damages of $75 million although the shipments at issue are valued at $230,000. Gallo further claims that Andina disregarded the distributorship agreement's forum selection provision, which requires Andina to address its claims in California under California law, and failed to properly serve Gallo with process in the Ecuadoran action to allow Gallo to properly defend Andina's claims. Gallo claims it did not learn of the Ecuadoran action until September 16, 2004.

On October 26, 2004, Gallo filed a state court action (later removed to this Court as this

---

[1] Andina's predecessor entered into a similar 1978 non-exclusive distributorship agreement with Gallo.

action) to challenge the Ecuadoran action and to pursue claims for declaratory relief, abuse of process, unfair competition and breach of contract. In this action, Gallo contends that Andina's pursuit of the Ecuadoran action violated the distributorship agreement's forum selection clause to obtain a judgment by inconvenience of forum and failure to properly notify Gallo.

In response to Andina's motion to dismiss, the district judge issued a June 24, 2005 order that the distributorship agreement's forum selection clause is enforceable and that this Court has personal jurisdiction over Andina.

On November 15, 2005, Gallo served Andina with first sets of interrogatories and requests for documents and admission to address Andina's contentions and defenses. Gallo contends that Andina's responses are "largely evasive and non-informative" to require follow-up depositions and significant time to determine "what responsive documents exist and where they are located."

**Deposition And Mediation Discussions**

According to Gallo counsel Tod L. Gamlen ("Mr. Gamlen"), he initiated discussions to schedule a mediation, and that during October 27, 2005 and November 17, 2005, he had several communications with defense counsel Sean O'Rourke ("Mr. O'Rourke") and which resulted in an agreement of a San Francisco mediation. In his declaration, Mr. Gamlen notes that the issue arose to depose Andina witnesses in San Francisco near the time of the mediation and that Gallo agreed to pay expenses of Andina deponents to travel to California.

On November 7, 2005, Mr. Gamlen sent Mr. O'Rourke a November 7, 2005 e-mail to inquire if Mr. O'Rourke's "clients[2] are willing to come to California for deposition with Gallo to pay their expenses. Otherwise, we will notice the depositions for Ecuador." Mr. O'Rourke responded with a November 8, 2005 e-mail that he would get back to Mr. Gamlen after hearing "from my client. Given the timing, and this is just an idea I am floating, would we be able to schedule the depositions, if they occur here in the U.S., for right after the Mediation?" Mr. Gamlen responded that he would check with Gallo.

In his declaration, Mr. Gamlen states:

---

[2] Andina identifies Mr. Naranjo and Mr. Cevallos as its highest officers.

3

On November 17, 2005, I had a telephone discussion with Mr. O'Rourke in which he informed me that his clients were agreeable to having their depositions taken in San Francisco at the time of the mediation if Gallo was agreeable to paying their travel expenses. As far as I was concerned we had an agreement on this point, although the date of the mediation had not yet been agreed upon.

On or about November 23 Mr. O'Rourke's office and I agreed that the mediation would take place on January 16, 2006 before Justice Edward J. Panelli (retired). Based on the agreement reached on November 17 it was my understanding that the Andina witnesses would be coming to San Francisco for the January 16 mediation and that they would thereafter be deposed in San Francisco.

On December 14, 2005 I had a telephone discussion with Mr. O'Rourke. At that time he informed me his clients were now unwilling to have their depositions take place in California, notwithstanding the agreement we had reached on November 17. He also informed me that his clients would require an interpreter for their depositions.

In his declaration, Mr. O'Rourke challenges that there was an agreement for California depositions:

. . .Gallo's counsel, Mr. Gamlen, and I never reached any agreement on taking the deposition of any ANDINA representative here in the United States of America. At most, I expressed to Mr. Gamlen, in very clear terms, that it was simply my personal preference to have such a deposition here. However, I always advised him I would have to see what my client's wishes were.

On December 14, 2005, I advised GALLO's counsel that my clients did not wish to have any of their representatives' depositions taken in the U.S. I advised GALLO's counsel that only . . . [Mr.Cevallos] was planning on attending the mediation. . . . I have later learned that [Mr. Cevallos] will be staying in Ecuador during the mediation, and that Mr. Naranjo is coming instead.

On December 15, 2005, Gallo served notices to set Mr. Cevallos' two-day deposition, starting January 17, 2006 and Mr. Naranjo's two-day deposition, starting January 19, 2006. Gallo set the depositions for the San Francisco office of Mr. Gamlen's firm.

Mr. Gamlen notes that in his December 23, 2005 telephone and e-mail communications with Mr. O'Rourke, he informed Mr. O'Rourke that "Gallo would be willing to pay the travel expenses for the relevant Gallo witnesses who are located in Ecuador to come to California for deposition, in addition to the travel expenses of Naranjo and Cevallos."

**Andina's Motion For Protective Order And Gallo's Motion**

**To Extend Depositions To 14 Hours**

Mr. O'Rourke rejected Mr. Gamlen's request to address the place and duration of Mr. Naranjo and Mr. Cevallos' depositions by a telephone conference with this Court. On December 27, 2005,

4

Andina filed its motion for protective order to set the depositions in Ecuador and to limit each to seven hours. The parties agreed to an expedited hearing before this Court on January 6, 2006 at 2 p.m.

     Andina contends that:

1. No agreement was reached to depose Mr. Naranjo and Mr. Cevallos in California; only a proposal was suggested;
2. Gallo set Mr. Naranjo and Mr. Cevallos' depositions to disrupt Andina's business for several days in that the depositions as set would keep Mr. Naranjo and Mr. Cevallos away for more than a week;
3. Ecuador is an appropriate place for Mr. Naranjo and Mr. Cevallos' depositions because it is the place of their citizenship, residence, employment and business;
4. Mr. Naranjo and Mr. Cevallos' depositions can be conducted in Ecuador in conjunction with other witnesses;
5. A video conference deposition is an alternative to avoid travel costs; and
6. Extensive discovery to date mitigates against the depositions exceeding seven hours.

In support of depositions in San Francisco, Gallo contends that:

1. Gallo will pay Mr. Naranjo and Mr. Cevallos' travel expenses and those of Xavier Castro ("Mr. Castro") and Esteban Alarcon ("Mr. Alarcon"), whom Gallo characterizes as "non-duplicative Gallo witnesses identified by Andina" for depositions in Ecuador;
2. The parties would save thousands of dollars to conduct the depositions in California. To conduct the depositions in Ecuador, Gallo estimates the parties would incur $33,180, including:
   a. $8,400 (travel and hotel for Mr. Gamlen, court reporter, videographer and translator);
   b. $14,280 (Gallo's attorney fees for travel based on 28 hours multiplied by $510 hourly fee);
   c. $2,100 (Mr. O'Rourke's travel and hotel costs); and
   d. $8,400 (Mr. O'Rourke's attorney fees for travel based on 28 hours multiplied by $300 hourly fee).

5

3.       To conduct depositions in California, Gallo estimates Mr. Naranjo and Mr. Cevallos travel and hotel costs would be $3,430 and those for Mr. Castro and Alarcon would be $2,630 for a total of $6,060.

4.       There are logistical advantages to California depositions in that the voluminous files of Gallo's counsel are in California and the videographer and court reporter have bulky equipment.

5.       Gallo's counsel has a San Francisco office to accommodate the depositions after the mediation in San Francisco, which has a large international airport;

6.       Mr. Naranjo travels frequently to the United States where he spends half his time on a Florida yacht and to visit his daughter;

7.       Disputes arising during depositions would be more easily resolved; and

8.       Pursuant to the distributorship agreement, Andina agreed to resolution of disputes in California under California law.

Gallo contends that good cause supports extending Mr. Naranjo and Mr. Cevallos' depositions to 14 hours in that translators are needed, many documents are in Spanish, Andina provided evasive responses to written discovery, and the covered topics include events over many years, including a preceding distributorship agreement, the parties' practices to order and ship Gallo products, alleged late shipments, Andina's relationship with the Ecuadoran supermarket chain at issue, and 2003 and 2004 meetings. Gallo argues that logistical travel and timing issues warrant this Court's advance determination of deposition length rather than delay until completion of seven hours.

## DISCUSSION

### Protective Order Standards

Under F.R.Civ.P. 26(c), this Court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including:

1.       Prohibiting disclosure or discovery;

2.       Conditioning disclosure or discovery on specified terms, "including a designation of the time or the place";

6

1       3.      Permitting discovery be had by a method other than selected by the party seeking discovery; or

3       4.      Limiting the scope of disclosure or discovery to certain matters.

To obtain a protective order, the party resisting discovery or seeking limitations must show "good cause" for its issuance. F.R.Civ.P. 26(c); *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). Generally, a party seeking a protective order has a "heavy burden" to show why discovery should be denied and strong showing is required before a party will be denied the right to take a deposition. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). A motion for protective order must be "accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." F.R.Civ.P. 26(c).

With these protective order standards in mind, this Court turns to Andina's objections to Mr. Naranjo and Mr. Cevallos' depositions set by Gallo.

### Place Of Depositions

Generally, noticing parties have discretion where to set depositions. "Usually, a party seeking discovery may set the place where the deposition will take place, subject to the power of the courts to grant a protective order designating a different location." *Philadelphia Indemnity Ins. v. Federal Ins. Co.*, 215 F.R.D. 492, 495 (E.D. Pa. 2003) (citing several cases); *see Turner v. Prudential Ins. Co. of America*, 119 F.R.D. 381, 383 (M.D. N.C. 1988) (generally, the deposition of a party or its officers may be noticed wherever the deposing party designates, subject to a court's power to grant a protective order).

Courts presume that a defendant's deposition will proceed at his place of residence, business or employment:

> Although the federal rules do not prevent plaintiff's designating any place he chooses for the taking of a defendant's deposition, the cases indicate that it is presumed that a defendant will be examined at his residence or at his place of business or employment; if another place is named and defendant files a timely objection the objection should be sustained absent some unusual circumstance to justify putting the defendant to such inconvenience.

*Grey v. Continental Marketing Assocs.*, 315 F.Supp. 826, 832 (N.D. Ga. 1970).

1   A corporate officer or employee's deposition "should usually take place at the corporation's principal place of business or, as other courts have held, at his place of business or employment." *Philadelphia Indemn.*, 215 F.R.D. at 495 (citing several cases). Nonetheless, a plaintiff may arrange "to take depositions at a time when defendants will be in this state, if possible, but otherwise plaintiff must take any depositions he wishes at the defendants' residence or place of business." *Grey*, 315 F.Supp. at 832.

If the parties cannot resolve disputes regarding location, a protective order may be obtained. F.R.Civ.P. 26(c). "The Court has considerable discretion in determining the place of a deposition, may consider the relative expenses of the parties and may order that expenses be paid by the opposing party." *Generale Bank Nederland N.V. v. First Sterling Bank*, No. Civ. A. 07-2273, 1997 WL 778861, at 2 (E.D. Pa. 1997). "The Court is permitted to exercise a broad discretion in determining the appropriate place for examination and may attach conditions such as payment of expenses." *Turner*, 119 F.R.D. at 383. Although a presumption exists to depose a defendant at his residence or place of business, "a number of factors serve to dissipate the presumption and may persuade the Court to require the deposition to be conducted in the forum district or some other place. . . . Ultimately, the Court must consider each case on its own facts and the equities of the particular situation." *Turner*, 119 F.R.D. at 383 (citations omitted).

Factors which a court may consider include:

1. The parties' convenience and relative hardships to attend the designated location;
2. Cost of transportation and lost work to defendant;
3. Expense and inconvenience to move voluminous documents;
4. Whether the parties' counsel are located in the forum district;
5. Whether the defendant is a large corporation whose employees often travel;
6. Whether significant discovery disputes may arise and judicial economy favors resolution by the forum court or other similar concerns; and
7. Whether the parties' claims and parties' relationship are such that appropriate adjustment of the equities favors a deposition site in the forum district.

*Turner*, 119 F.R.D. at 383 (citing several cases); *Wisconsin Real Estate Inv. Trust v. Weinstein*, 530

1  F.Supp. 1249, 1254 (E.D. Wis. 1982).

2  As noted by Andina, Mr. Naranjo and Mr. Cevallos are Ecuadoran. Andina points to the following from a leading practice guide:

> Foreign nationals or U.S. citizens living abroad who are parties to an action are subject to the court's personal jurisdiction and may be deposed wherever the court directs. However, such parties are usually deposed where they reside – i.e., courts rarely require them to return to the United States to have their depositions taken.
>
> Service of a deposition notice is effective by itself to compel such persons to attend and to testify, and to produce for inspection any document or thing described in the notice. . . .
>
> . . . However, international comity requires American courts to exercise "special vigilance" to avoid subjecting foreign litigants to unreasonably burdensome discovery.

2 Schwarzer, Tashima & Wagstaffe, *Cal. Practice Guide: Federal Civil Procedure Before Trial* (2005) Discovery, paras. 11:1281 and 11:1282, p. 11-136 and 11-137.

Travel expenses, time consumption and inconvenience appear to be the gist of Andina's objections to Mr. Naranjo and Mr. Cevallos' San Francisco depositions. The parties have arranged a January 16, 2006 San Francisco mediation which Mr. Naranjo will attend. Gallo has offered to pay Mr. Naranjo and Mr. Cevallos' travel and lodging expenses for depositions in California to negate hardship issues for Andina. Andina fails to specify specific hardship or lost work and relies on broad generalizations to seek a protective order. Andina offers only a video conference alternative which does not appear productive given the need for translators and documents in Spanish.

To further bolster San Francisco depositions, Gallo points to logistical conveniences as to voluminous documents, translators, court reporters, videographers, and large international airport proximity. The parties' counsel are in California and will travel to San Francisco for the mediation. Presumably, this Court will be better able to address disputes arising from depositions in San Francisco rather than in Ecuador. Andina refers to no equities to support Ecuador depositions, especially given that the parties' counsel and Mr. Naranjo will attend the January 16, 2006 mediation in San Francisco. Andina points to no good faith meeting and conferring on its part to attempt to resolve the issue and spurned such attempts with this Court's help. Andina should not be rewarded for its obstruction to legitimate discovery.

/ / /

**Seven-Hour Deposition Limit**

F.R.Civ.P. 30(d)(2) addresses the seven-hour deposition limit:

> Unless otherwise authorized by the court or stipulated by the parties, a deposition is limited to one day of seven hours. The court must allow additional time consistent with Rule 26(b)(2)[3] if needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination.

The Advisory Committee Notes for the 2000 Amendment to F.R.Civ.P. 30(d)(2) address extending the seven-hour limitation:

> Paragraph (2) imposes a presumptive durational limitation of one day of seven hours for any deposition. . . . This limitation contemplates that there will be reasonable breaks during the day for lunch and other reasons, and that the only time to be counted is the time occupied by the actual deposition. For purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition. The presumptive duration may be extended, or otherwise altered, by agreement. Absent agreement, a court order is needed. The party seeking a court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order.
>
> Parties considering the time for a deposition – and courts asked to order an extension – might consider a variety of factors. For example, if the **witness needs an interpreter**, that may prolong the examination. If the examination will cover **events occurring over a long period of time**, that may justify allowing additional time. In cases in which the witness will be questioned about numerous or lengthy documents, it is often desirable for the interrogating party to send copies of the documents to the witness sufficiently in advance of the deposition so that the witness can become familiar with them. Should the witness nevertheless not read the documents in advance, thereby prolonging the deposition, a court could consider that a reason for extending the time limit. If the examination reveals that **documents have been requested but not produced**, that may justify further examination once production has occurred. . . .
>
> It is expected that in most instances the parties and the witness **will make reasonable accommodations to avoid the need to resort to the court**. . . . Preoccupation with timing is to be avoided.
>
> The rule directs the court to allow additional time where consistent with Rule

---

[3] F.R.Civ.P. 26(b)(2) addresses limits on discovery:

By order, the court may alter the limits in these rules on . . . the **length of depositions** under Rule 30. . . . The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rules shall be limited by the court if it determines that: ( i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. (Bold added.)

10

1    26(b)(2) if needed for a fair examination of the deponent.  (Bold added.)

2    A leading practice guided has commented on the timing to consider an extension beyond seven

3 hours:

4 > Normally, it is preferable to wait until after one day of testimony has been taken before asking the court for additional time because only then can anyone really know if one day
5 > of seven hours was sufficient.

6 > On the other hand, if lengthy and expensive travel arrangements must be made in order to take the deposition, it makes sense to ask the court to resolve this issue ahead of time.
7

8 2 Schwarzer, Tashima & Wagstaffe, *Cal. Practice Guide: Federal Civil Procedure Before Trial* (2005)

9 Discovery, para. 11:1523, p. 11-175.

10    Andina appears to concede that interpreters will be required for Mr. Naranjo and Mr. Cevallos'

11 depositions.  Andina appears to claim, without substance, that the translations should be seamless to

12 warrant no additional time for Mr. Naranjo and Mr. Cevallos' depositions.  Andina fails to support its

13 claim that discovery to date should limit inquiry of Mr. Naranjo and Mr. Cevallos' depositions,

14 especially given Gallo's characterization of Andina's discovery responses.  Andina points to no further

15 concerns or its attempt to meet and confer in good faith to address the depositions' duration.

16    Gallo points to good cause factors to extend the seven-hour deposition limit for Mr. Naranjo and

17 Cevallos.  The translations, including those of documents, will slow the depositions.  The issues at hand

18 cover many years and transactions.  Gallo notes that Mr. Naranjo is Andina's president, signed the

19 distributorship agreement, and was responsible for day-to-day distributorship matters and ordering at

20 relevant times.  Gallo further notes that Mr. Cevallos is Andina's general manager, represented Andina

21 in the Ecuadoran action, and signed filings for Andina.  Andina points to no legitimate intent of Gallo

22 to conduct less than diligently Mr. Naranjo and Mr. Cevallos' depositions, and this Court reminds

23 Gallo's counsel of his obligation to conduct legitimate, expeditious inquiry of witnesses.  Andina fails

24 to substantiate delay to rule on the length of the depositions, a matter which should be determined in

25 advance given the logistical challenges.  Gallo has demonstrated good cause to conduct up to 14-hour

26 depositions of Mr. Naranjo and Mr. Cevallos.

27                              **CONCLUSION AND ORDER**

28    For the reasons discussed above, this Court:

1.  DENIES Andina's motion for protective order;
2.  ORDERS Mr. Naranjo and Mr. Cevallos to appear for their depositions in San Francisco as set by Gallo on January 17 and 19, 2005;
3.  ORDERS Gallo to pay all of Mr. Naranjo and Mr. Cevallos' travel and lodging expenses to come and stay in San Francisco and to return to Ecuador; and
4.  GRANTS Gallo's motion to extend Mr. Naranjo and Mr. Cevallos' respective depositions to 14 hours.

IT IS SO ORDERED.

**Dated:   January 5, 2006**                              **/s/ Lawrence J. O'Neill**
66h44d                                                                       UNITED STATES MAGISTRATE JUDGE