IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| E. & J. GALLO WINERY, a California corporation,<br><br>     Plaintiff,<br><br> v.<br><br>ANDINA LICORES S.A., a corporation organized under the laws of Ecuador,<br><br>     Defendant | CV F 05-0101   AWI LJO<br><br>MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT OR SUMMARY ADJUDICATION<br><br>[Document # 95] |

## INTRODUCTION

In this memorandum opinion, the court takes up the second of two dispositive motions in this action for damages and declaratory relief by plaintiff E. & J. Gallo Winery ("Gallo") against defendant Andina Licores S.A. ("Andina").  In the first of the motions considered by the court, Andina moved to dismiss the complaint in this action pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  In a prior memorandum opinion and order filed by the court on June 30, 2006, the court dismissed Gallo's claims for abuse of process and for unfair business practices under California Business and Professions Code, section 17200.  The court denied Andina's motion to dismiss Gallo's claims for breach of contract and for declaratory relief.

In the instant motion, Gallo moves for summary judgment on all of its claims against Andina.  Because Gallo's claims for abuse of process and unfair business practice have been

dismissed, the court will only consider the remaining claims for breach of contract and for declaratory relief.  Diversity Jurisdiction exists pursuant to 28 U.S.C. § 1332.  Venue is proper in this court.

## PROCEDURAL HISTORY

The California action commenced in this court with the removal of the case from the Stanislaus Superior Court on January 24, 2005.  In the California action, Gallo requests declaratory judgment and alleges claims for abuse of process, unfair competition under California law, and breach of contract.  Andina filed a motion to dismiss for lack of personal jurisdiction on the same day the case was removed to this court.  Andina's motion to dismiss was denied without prejudice because Andina failed to properly notice the motion.  Gallo filed a motion to remand on February 23, 2005, which was subsequently denied on April 15, 2005.  Andina filed its second motion to dismiss on April 28, 2005.  Gallo filed its opposition to Andina's motion and a cross-motion for preliminary injunction and letter rogatory on May 23, 2005.  On June 27, 2005, the court filed a memorandum opinion and order denying Andina's motion to dismiss and denying Gallo's motion for preliminary injunction and letter rogatory.  Gallo appealed the court's denial of Gallo's request for preliminary injunction.  The Ninth Circuit Court of Appeal reversed the court's denial by an order dated May 1, 2006.  Pursuant to the order of the appellate court, this court issued a preliminary anti-suit injunction prohibiting Andina's prosecution of the Ecuador action on May 4, 2006.

Andina filed its motion for judgment on the pleadings on February 24, 2006.  On June 30, 2006, this court filed a memorandum opinion and order granting Andina's motion to dismiss as to Gallo's claims for abuse of process and unfair business practices (The "June 30 Order").  Andina's motion to dismiss was denied as to Gallo's claims for declaratory relief and breach of contract.  Gallo filed the instant motion for summary judgment on February 25, 2006.  Andina's opposition was filed March 27, 2006, and Gallo's reply was filed on April

2

18, 2006.

## GENERAL FACTUAL BACKGROUND

Gallo is a large, family-owned winery whose headquarters are located in Modesto, California.  Gallo manufactures a variety of wine products in facilities located in California and markets its products worldwide.  In 1978 Gallo entered into an agreement with Andina, then a limited liability company, to distribute certain of Gallo's products in Ecuador.  Of significance, pursuant to the Agreement, the parties agreed that all legal disputes arising under the Agreement would be litigated in Stanislaus County or in the federal district court having jurisdiction in Stanislaus County.  The Agreement also provided that any disputes between the parties would be resolved pursuant to California law.  Gallo alleges the Agreement provides that CT Corporation would serve as Gallo's agent in Ecuador for service of process.

In 1987 Andina changed its structure to become a corporation and updated its distributor agreement with Gallo (hereinafter, the "Agreement") to reflect the change.  On April 5, 2004, Gallo received correspondence from Andina that alleged Gallo had breached the Agreement by violating Andina's exclusive distributorship right, that Gallo had delayed shipment of products and had overcharged.  Gallo answered Andina's correspondence by pointing out that the Agreement does not provide Andina exclusive distributorship rights.  Gallo also denied the other allegations.  Andina commenced the Ecuador action on or about August 11, 2004, by filing a lawsuit in the Second Civil Court of Guayaquil, Ecuador, alleging causes of action for breach of the Agreement.

Gallo's complaint alleges it was never served notice of the Ecuador action in conformity with Ecuadorian or American law and only became aware of the action when it received a letter from the *curador dativa* on September 16, 2004.  Gallo alleges they were informed that the Ecuador action involved an extremely foreshortened discovery period which ended one day after Gallo received notice of the action.  Because the *curador dativa*

3

presented only generalized denials of the allegations contained in Andina's Ecuador action, Gallo alleges it was prevented from presenting any affirmative defenses, including defenses pertaining to inadequate service of process and forum and choice of law provisions of the agreement.  In this court the parties have represented that the Ecuador action was subsequently dismissed for lack of proper jurisdiction, but that Andina has appealed that dismissal.

The California action commenced in this court with the removal of the case from the Stanislaus Superior Court on January 24, 2005.  In the California action, Gallo requests declaratory judgment and alleges claims for abuse of process, unfair competition under California law, and breach of contract. In the June 30 Order, the court granted Andina's motion to dismiss Gallo's claims for abuse of process and unfair business practices because those claims are barred by California's "litigation privilege."  Gallo's claims for declaratory relief and breach of contract were not dismissed.

## UNDISPUTED MATERIAL FACTS

The following undisputed material facts are proffered by Gallo and are admitted by Andina unless otherwise noted.  Proffered undisputed material facts that are not relevant to the discussion that follows are omitted.

Gallo is a winery headquartered in Modesto, California; it is a worldwide producer and marketer of wine and wine-based spirits.  Andina is an Ecuadorian corporation, located in Guayaquil, Ecuador, and is engaged in the business of acting as a wine and liquor distributor.  In 1978 Gallo entered into a non–exclusive distributorship agreement ("the 1978 Agreement" or "Agreement") with Andina Licores CIA LTDA, a limited liability company, which was Andina's predecessor entity.

Under the 1978 Agreement Andina Licores CIA LTDA was appointed a non-exclusive distributor of certain Gallo wine products in Ecuador.  Andina admits the Agreement designates Andina Licores as a non-exclusive distributor, but contends that

4

notwithstanding this designation, Ecuadorian Decree 1038-A makes it unlawful for Gallo to sell its wines to Andina's customers.

By 1987 Andina Licores CIA LTDA had changed its structure to become corporation, and changed its name to Andina Licores, S.A. (*i.e.*, Andina).  In 1987 a distributor agreement ("the 1987 Agreement") was executed between Andina and Gallo in which Andina was substituted for Andina Licores CIA LTDA as Gallo's distributor of the Gallo products referred to in the Agreement in Ecuador.

The 1978 Agreement and 1987 Agreement contained a forum selection clause in paragraph 8 which provided that ". . . any cause of action arising between the parties, whether under the Agreement, or otherwise, shall be brought only in a Court having jurisdiction and venue at the home office of Gallo . . . ."  The 1978 Agreement and 1987 Agreement each contained a choice of law clause in paragraph 8 that the Agreement was "entered into under the laws of California and shall be construed thereunder; . . . ."  The 1978 Agreement and 1987 Agreement stated that the parties "agree that Distributor is to be a non-exclusive distributor" for the products of Gallo referred to in each of the respective agreements; and, ¶ 5 of each agreement states that "Nothing herein shall be deemed to give Distributor any exclusive rights within any part of the area described above."

Both the 1978 Agreement and 1987 Agreement were signed by Andres Naranjo. Gallo contends that prior to signing the 1978 Agreement Naranjo had sufficient time to read and review it, or have it reviewed by Andina's lawyers.  Gallo alleges Naranjo likewise had time to review the 1987 Agreement before signing it.  Andina contends there was insufficient time to review the documents in that they had to be translated into Spanish and they were presented to Naranjo on a "take it or leave it basis."  The court accepts Gallo's proffered undisputed fact as established with respect to the 1987 Agreement.  Since the 1987 agreement essentially reiterated the provisions of the 1978 Agreement, and given that Andina had operated under that Agreement for nine years before the 1987 Agreement was signed, the

court must presume Naranjo was familiar with the contents of both Agreements by the time he signed the 1987 Agreement.

In August 2004 Andina filed a complaint in the Civil Court of Ecuador located in Guayaquil ("the Ecuador Action"); the Ecuador Action was initially assigned to the Second Civil Court of Guayaquil.  On or about August 8, 2005, the Second Civil Court of Guayaquil issued a ruling in the Ecuador Action.  A certified English translation of the decision of the Second Civil Court of Guayaquil has been submitted by Gallo.  The court takes judicial notice of that decision.

The 1987 Agreement and 1978 Agreement contained a provision in paragraph 8 that the parties would register with CT Corporation System to act as a designated agent for service of process; in this regard, paragraph 8 provides that "Winery and Distributor each hereby designate CT Corporation System, 800 South Figueroa, Los Angeles, California 90017, USA, as agent for service of process in any such cause of action."  Gallo alleges Andina did not file its causes of action against Gallo in ". . . a court having jurisdiction and venue at the home office . . ." of Gallo with respect to any of its claims that it filed in the Ecuador Action.  Andina does not directly dispute the allegation, but disputes that it had an obligation to file its suit in a court having jurisdiction and venue at the home office Gallo because Ecuadorian Decree 1038-A invalidated such forum selection and choice of law clauses.  The court will address Andina's contentions in the discussion that follows.

At no time has Andina ever appointed CT Corporation System to act as its designated agent for service of process, to act as agent for service of process in any claim or cause of action which Andina has against Gallo, or otherwise.  Andina did not serve Gallo with the complaint in the Ecuador Action through CT Corporation System.  Gallo alleges that in defending the Ecuador Action, Gallo has incurred legal fees and costs to date of at least $140,193.25.  Gallo also alleges that because Andina did not designate CT Corporation System as agent for service of process, Gallo was required to serve Andina with a summons

6

and complaint in this action by means of the Hague Convention; the fees and costs incurred by Gallo in this regard equal approximately $1,500.00. Andina disputes both the amounts claimed and the necessity of the expense claimed.

In its Complaint in the Ecuador Action, Andina alleges that Gallo breached the 1987 Agreement in the following three ways—(i) by selling direct to a supermarket chain named SuperMaxi; (ii) by delaying the shipments of three orders that Andina placed with Gallo in 2003, *i.e.*, Order Nos. 7GW/203; 8GW/2003; 12 and 13GW/2003; and, (iii) not processing orders in 2004 and raising prices to Andina in 2004. Gallo contends that at no time did Gallo ever terminate the 1987 Agreement. Andina contends that Gallo's conduct in 2003 constituted a breach of the agreement. Andina's contention will be discussed, *infra*.

During the year 2003 Andina wished to purchase products from Gallo under the 1987 Agreement, the first step it would follow would be to send a Gallo a request for *pro forma invoice* for the products Andina wished to purchase; in the year 2003 such requests were sent by Andina to Gallo in California by e–mail. Such requests by Andina would set forth the product which Andina wished to purchase, the amount of such product, and the time frame that Andina wished to obtain the product. Such requests would not set forth a price.

The purpose of the *pro forma invoice* was to advise Andina of the products that Gallo had available for shipment, and the prices and other costs that Gallo would charge for such products. It would also reflect the shipping costs for which Andina was to be charged. The purpose of the *pro forma invoice* was to advise Andina of the products that Gallo had available for shipment, and the prices and other costs that Gallo would charge for such products. It would also reflect the shipping costs for which Andina was to be charged.

There were several reasons why Gallo would not have the ability at a given time to ship the products that Andina requested, including that Gallo did not have sufficient amounts of such products in Gallo's inventory; whether health registration certificates for such products were still in effect and would be when the shipment arrived it did not have a

sufficient number of labels prepared that were required by Ecuador law.  In those situations where Gallo did not have the ability to ship the amount of each product being requested by Andina, Gallo would notify Andina of such fact and the parties would discuss alternate products, amounts and/or shipping times for which Gallo could provide product.  In this regard the parties discussed such things as substituting one product for another, or changing the amounts of the products being requested by Andina.  Once the parties agreed on the products which Gallo could ship and the amounts of such products, Gallo would then send a *pro forma invoice* for such products, setting forth the products which Gallo had the ability to ship, the amounts of such products, and the prices.  Once Gallo sent its *pro forma invoice* with this information, Andina confirmed its agreement to such *pro forma invoice*.  Until the *pro forma invoice* sent by Gallo was approved by Andina, no agreement was reached between the parties for the shipment of goods by Gallo to Andina.  Once such agreement was reached then the importation process began.

In its Answer to Interrogatory No. 6 Andina states that the delays in Order 2003/7/GW were ". . . due to 'quality reasons,' and labels on the products, as well as expiration of the health registration . . ."; and ". . . On order No. 2003/7/GW . . . there was also a problem with labels . . . ."

Gallo proffers the following undisputed material facts with regard to the three individual shipments, 7GW/2003; 8GW/2003; 12 and 13GW/2003.  Andina objects to the proffered facts citing the deposition of a Mr. Ivan Cevallos, included as Exhibit 12 of the Declaration of Mr. O'Rourke, filed March 27, 2006, Doc. # 124.  The court has examined the cited deposition and finds the facts asserted therein do not directly contradict Gallo's proffered facts.  Both Gallo's proffered facts, and the declaration cited by Andina point to a number of problems with labeling and certificates of health that delayed shipments, particularly combined shipment 12 and 13GW/2003.  As Gallo alleges, the delays in question occurred mostly before the order was accepted.  Gallo characterizes the delays as constituting

"slow negotiations" prior to the finalization of an agreement.  Andina does not provide evidence that the delays should be characterized in a contrary way.

With respect to Order 07GW/2003, the following events occurred:

1. Andina sent its request for *pro forma invoice* on or about May 30, 2003.

2. After the request for *pro forma invoice* was sent by Andina Gallo had various communications with them because Gallo did not have the ability to ship all of the products requested by Andina in the amounts being requested, due to issues with labels and the availability of the product.

3. In the discussions and e-mail exchanges between Gallo and Andina alternative products and quantities were discussed.  At the conclusion of these discussions Andina and Gallo agreed to alternative products and quantities for the products originally requested by Andina which Gallo could not ship.  *Pro forma invoices* confirming *cash on delivery* payment terms and the products and quantities to which Andina and Gallo agreed would be shipped by Gallo to Andina for this order was sent on or about July 18, 2003.  After these *pro forma invoices* were sent Andina confirmed with Gallo that the terms of the *pro forma invoices* were accepted by Andina and therefore the terms of order 2003/07GW were agreed upon.

4. Consequently, to the extent there were problems with labels and availability of quality product on hand, such problems arose before any agreement was reached between Gallo and Andina as to the products and quantities to be shipped by Gallo before the *pro forma invoice* was sent on July 18, 2003; and, the *pro forma invoice* sent contained the terms of Gallo and Andina's agreement as to the payment terms, the prices, and the quantities, for the product that was to be sent by Gallo to Andina in Ecuador for this order.

5. Thereafter, the importation process commenced.  Andina subsequently provided

9

confirmation of an import permit and an inspection number and Gallo arranged for an inspection of the shipment by SGS.  Such inspection took place on August 8, 2003, was approved, the shipping instructions were confirmed, and the shipment left Gallo's facilities in Modesto for Oakland on the same date.

6.     On August 15, 2003 this shipment left Oakland for Guayaquil, Ecuador.

       With respect to Andina's Order 08GW/2003, the following events occurred:

1.     Andina sent by e-mail its request for *pro forma invoice* in or about early July 2003.

2.     After the request for *pro forma invoice* was sent by Andina various communications and discussions took place between Gallo and Andina because Gallo did not have the ability to ship all of the products requested by Andina in the amounts being requested, due to issues with labels.

3.     After such discussions, Andina requested that Gallo delay the order until the new labels were finalized and printed for the Carlo Rossi product.  Sometime in mid-August Andina contacted Gallo and requested that the order be processed without the Carlo Rossi product; after discussing the other products and quantities Andina wished to receive, *pro forma invoices* confirming *cash on delivery* payment terms and the products and quantities to which Andina and Gallo agreed would be shipped by Gallo to Andina for this order was sent to Andina on or about August 14, 2003.  After these *pro forma invoices* were sent Andina confirmed with Gallo that the terms of the *pro forma invoices* were accepted by Andina and therefore the terms of order 2003/08GW were agreed upon.

4.     Consequently, to the extent there were problems with labels for the Carlo Rossi product, such problems arose before any agreement was reached between Gallo and Andina as to the products and quantities to be shipped by Gallo before the *pro forma invoices* were sent on August 14, 2003; and, the *pro forma invoices* sent contained the terms of Gallo and Andina's agreement as to the payment terms, the prices, and the

quantities, for the product that was to be sent by Gallo to Andina in Ecuador for this order.

5.    Thereafter the importation process commenced.  Andina subsequently provided confirmation of an import permit and an inspection number and Gallo arranged for an inspection of the shipment by SGS.  Such inspection took place on August 22, 2003, was approved, the shipping instructions were confirmed, and the shipment left Gallo's facilities in Modesto for Oakland on the same date.

6.    On September 3, 2003 this shipment left Oakland for Guayaquil, Ecuador where it should have arrived on or about September 21, 2003.

With respect to Order No. 12/13GW/2003 the following events occurred:

1.    There were three requests sent by Andina which were ultimately combined into Order Nos. 2003/12/13GW.

2.    During the period from late August 2003 to October 2003, Gallo had several discussions with Andina, Ivan Cevallos about Gallo's ability to ship the products being requested by Andina in these requests.  One major component of the discussions during these time frame pertained to the inability to ship certain product due to the lack of new labels bearing new health registration numbers for certain products.  In September 2003 we also discussed the inability of the usual shipping lines, due to heavy seasonal shipping volume and lack of equipment, to manage to transport this large shipment.  Gallo had to locate another shipping line to accommodate this shipment and the replacement shipping line increased the cost of this shipment by approximately $4500, a cost which Gallo agreed to pay in order to avoid delay of this shipment.  Ultimately, Andina and Gallo agreed on the alternate products and/or amounts to be shipped for these orders.

3.    *Pro forma invoices* for Order 2003/12GW were initially sent on September 2, 2003.  However, before they were accepted we became aware of changes in shipping costs

11

and the combining of the orders referenced above so revised *pro forma invoices* were sent on October 8, 2003 confirming the *cash on delivery* payment terms, the price, the products and quantities, and the new shipping costs to which Andina and Gallo agreed. After these *pro forma invoices* were sent Andina confirmed with Gallo that the terms of these *pro forma invoices* were accepted by Andina and therefore the terms of orders 2003/12GW and 2003/13GW were agreed upon.

4. Consequently, to the extent there were problems with labels for any of the products originally requested by Andina as part of orders 2003/11GW, 2003/12GW or 2003/13GW, such problems arose before any agreement was reached between Gallo and Andina as to the products and quantities to be shipped by Gallo before the final *pro forma invoice*s were sent on October 8, 2003; and, the *pro forma invoices* sent contained the terms of Gallo and Andina's agreement as to the payment terms, the prices, and the quantities, for the product that was to be sent by Gallo to Andina in Ecuador for these orders.

5. Thereafter the importation process commenced. Andina subsequently provided confirmation of an import permit and an inspection number and Gallo arranged for an inspection of the shipment by SGS. Such inspection took place on October 13, 2003, was approved, the shipping instructions were confirmed, and the shipment left Gallo's facilities in Modesto for Oakland on the same date.

6. On October 20, 2003 this shipment left Oakland for Guayaquil, Ecuador where it should have arrived on or about November 6, 2003.

Paragraph 1(d) of the 1987 Agreement provides that "Distributor shall: . . . (d) Pay Winery for all purchase in accordance with terms from time to time set by Winery." During the period that Andina was ordering products from Gallo under the 1987 Agreement, Gallo would, from time to time, announce price increases for various products that it was selling to Andina. As a practice, Gallo would announce such price increases in January or February of

a given year.

In approximately February 2004, Gallo sent to Andina a notice that it was increasing the prices of the following products—Boone's Farm (all flavors), Carlo Rossi, and Night Train.  At the time that Gallo set the notification of price increase Gallo had two distributors in Ecuador, Quifatex and Andina Licores.  The price increases set forth in the 2004 price increase notification applied to both of these distributors.  In 2004, Andina sent requests for *pro forma invoices* to Gallo on one occasion only, on about January 9, 2004.  Andina refers to the request as Order 2004/01 and 02/GW.  Gallo did not refuse to process such request—Gallo sent a *pro forma invoice* in February 2004 and shipped the product in March 2004.

## LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 157 (1970); <u>Poller v. Columbia Broadcast System</u>, 368 U.S. 464, 467 (1962); <u>Jung v. FMC Corp.</u>, 755 F.2d 708, 710 (9th Cir. 1985); <u>Loehr v. Ventura County Community College Dist.</u>, 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  When the moving party has the burden of proof at trial, that party must carry its initial burden at summary judgment by presenting evidence affirmatively showing, for all essential elements of its case, that no reasonable jury could find for the non-moving party.  <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1438 (11th Cir.1991) (en banc); <u>Calderone v. United States</u>, 799 F.2d 254, 259 (6th Cir. 1986); see also <u>E.E.O.C. v. Union Independiente De La Autoridad De Acueductos Y</u>

Alcantarillados De Puerto Rico, 279 F.3d 49, 55 (1st Cir. 2002) (stating that if "party moving for summary judgment bears the burden of proof on an issue, he cannot prevail unless the evidence that he provides on that issue is conclusive.")

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International

Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

## DISCUSSION

### I.  Scope and Sequence of Issues to be Decided

The parties have each submitted dispositive motions on Gallo's four claims for relief. The court first addressed Andina's motion for judgment on the pleadings, which sought to dismiss each of Gallo's claims, principally on the ground the claims are barred by California's litigation privilege.  In its June 30 Order, the court granted Andina's motion to dismiss the claims for abuse of process and unfair business practice.  Gallo's motion for summary judgment as to those claims will therefore be denied without discussion.

On May 1, 2006, the Ninth Circuit Court of Appeals filed its opinion reversing this court's order of June 24, 2005, denying Gallo's motion for an anti-suit injunction to prevent Andina from further prosecuting the Ecuador action (the "May 1 Opinion").  E. & J. Gallo Winery v. Andina Licores S.A., 446 F.3d 984 (9th Cir. 2006).  In the May 1 Opinion, the Ninth Circuit Court of Appeals observed that "the contract clearly contains a California choice-of-law clause; thus, the validity of the forum selection clause should be decided by

California law, as the law of the contract, rather than by Ecuadorian law. [Citation.] Additionally, to the degree Ecuadorian law is applicable, the district court is capable of applying it. *See* Fed. R. Civ. P. 44(1)." Id. at 994. The Ninth Circuit also observed that the forum selection clause was "valid and enforceable." Id. at 995.

Under law of the case doctrine, issues of law once decided by a panel of the appellate court are generally not subsequently reviewable. See Merritt v. Mackey, 932 F.2d 1317, 1320 (9 Cir. 1991) ("Under the 'law of the case' doctrine, one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case"). Thus, the issues presented to, and decided by, the Ninth Circuit Court of Appeal in their May 1 Opinion are binding on this court's decisions absent some intervening change in law or facts and this court's discussion as to those issues is directed by holdings expressed in the May 1 Opinion.

The Ninth Circuit's May 1 Opinion is not entirely dispositive of the issue of whether Andina may claim any rights under Ecuadorian law; particularly under Decree No. 1038-A, that would permit Andina to satisfy its claims against Gallo in an Ecuadorian court under Ecuadorian law. The issue directly addressed in the May 1 Opinion was whether Gallo was entitled to an anti-suit injunction and what factors should be assessed to make that determination. Thus, the appellate court's observation at Gallo, 446 F.3d at 995 to the effect that the forum selection clause is valid and enforceable must be seen as dictum. The appellate court left it to this court to make the actual determination as to the validity of the forum selection clause when it observed the "clause should be decided by California law, as the law of the contract, rather than by Ecuadorian law." Id. at 994. The court will undertake first the determination of the binding nature of the choice of forum and choice of law provisions of the Agreement and then will determine the remainder of Gallo's claims in light of that determination.

**II.  The Choice of Law and Choice of Forum Provisions are Binding**

16

Although the Ninth Circuit's May 1 Opinion did not formally reach the issue of whether Decree No. 1038-A permits Andina to sue Gallo in Ecuador under Ecuadorian law, the May 1 Opinion does settle the ontological question of which court – this court or a court in Ecuador – may decide the issue.  By directing this court to enjoin Andina's action in Ecuador, and by observing the decision as to the applicability of Decree 1038-A to Andina's action in Ecuador is properly before this court, the Ninth Circuit has essentially directed this court to determine that this court, and not the Ecuadorian court, is to make the ultimate decision as to the applicability of the choice of law and forum clauses.

In its May 1 Order, the Ninth Circuit emphasized that both Supreme Court and Ninth Circuit cases clearly establish that  strong public policy supports the enforcement of forum selection clauses.  See Carnival Cruise Lines v. Shute, 499 U.S. 585, 593-594 (1991) (noting salutary effect of forum selection clauses in international trade); Northrop Corp. v. Triad Int'l Mktg., S.A., 811 F.2d 1265, 1270 (9th Cir. 1987) (forum selection clauses "should be enforced absent strong reasons to set them aside."); Gallo, 446 F.3d at 992.

In the context of international agreements, the Ninth Circuit has recognized and adopted the test in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) ("Bremen") to analyze the validity of choice of forum and choice of law provisions in contracts.  Richards v. Lloyds of London, 135 F.3d 1289, 1292 (9th Cir. 1998).  "Bremen emphasized that 'in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside.'  Bremen, 407 U.S. at 15."  Richards, 135 F.3d at 1294.  "The Supreme Court has identified three grounds for repudiating a forum selection clause: first, if the inclusion of the clause in the agreement was the product of fraud or overreaching; second, if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and third, 'if enforcement would contravene a strong public policy of the forum in which the suit is brought."  Id. (Citing Bremen, 407 U.S. at 12-13, 15, 18.)

17

In their opposition to Gallo's motion for summary judgment, Andina invokes to a greater or lesser extent all three grounds for repudiation of the forum selection and choice of law provisions.  As to overreaching or overweening, Andina has advanced arguments that were previously rejected by this court in its memorandum opinion and order of June 27, 2005.  Basically, the court found in the June 27 order that the fact the distributorship Agreement was a form-type pre-printed document that was presented to Andina on a take-it-or-leave-it basis does not render the Agreement invalid for overreaching or as an "adhesion contract."  Likewise, it does not make a difference that Gallo is large corporation, and Andina is relatively smaller.  The Ninth Circuit has made it clear that neither power differential between the parties or the non-negotiability of a contract are sufficient to invalidate a forum selection clause.  Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1141 (9th Cir. 2004).  Further, Andina is unable to point to anything in the Agreement that would lead the court to conclude the Agreement is unreasonable in any other way.  Andina has therefore failed to present any facts that would lead the court to depart from its previous conclusion that the Agreement was not the product of overreaching or an adhesion contract.

To the extent Andina argues that it will be deprived of its day in court if the forum selection clause is enforced, that claim has been addressed by the Ninth Circuit in their May 1 Order.  In the context of Andina's opposition to Gallo's request for anti-suit injunction, the court noted:

> Andina contends [. . .] enjoining the Ecuador action would deprive it of its right to pursue its claims under Ecuadorian law.  Not so.  First, it is not clear that Andina has claims under Ecuadorian law, as the contract contains a choice-of-law clause in favor of California [law].  Second, to the degree that Ecuadorian law does apply, federal courts are capable of applying it to Andina's claims.

Gallo, 446 F.3d at 991.

Andina's purpose in litigating in Ecuador is plainly apparent.  Beyond convenience, Andina's hope is it that it might recover damages according to the formula specified by Decree No. 1038-A, which allegedly awards damages in an amount equal to the product of

total yearly payments under the contract times the number of years the contract was in effect. That Andina would be forced to forego the possibility of a damage award that is so far removed from any reasonable concept of damages is hardly a depravation of legal remedy. The fact that the forum or choice of law specified by a contract affords remedies that are different or less favorable to the laws of the forum preferred by a plaintiff is not alone a valid basis to deny enforcement of the forum selection and choice of law provisions. Bonny v. Society of Lloyds, 3 F.3d 156, 162 (7 Cir. 1993). Andina was fully capable of seeking relief in California courts under California law, which, despite its ponderousness as compared to the abbreviated procedure provided by Decree 1038-A, provides both procedural fairness and reasonable recovery for damages actually suffered. To the extent Andina argues that enforcement if the forum selection or choice of law provisions of the Agreement would deprive Andina of its day in court, that argument is rejected.

Andina's main argument appears to be that enforcement of the forum selection clause would violate a strong policy, as embodied in Decree 1038-A, of the country where the suit is brought; that is, in Ecuador. First, as Gallo points out, Ecuador's repeal of Decree 1038-A is a strong indication that the portion of that decree that invalidates forum selection and choice of law clauses does not constitute strong public policy. Second, to the extent Decree 1038-A may have expressed a public policy against forum selection clauses, the strength or extent of that policy is not sufficient to justify the non-enforcement of the forum selection and choice of law provisions of the contract. Public policy against a forum selection clause will not prevent enforcement of the clauses where the contract implicates international trade and where the complaining party's substantive rights are not subverted by the choice of law or forum. See Bonny, 3 F.3d at 162 (holding anti-waiver provision of securities laws does not prevent enforcement of contract provision choosing English forum).

While Andina argues that Bonny, and presumably other similar Lloyds cases such as Richards are distinguishable on their facts, these cases provide a useful insight into the

19

strength of the presumption of validity that is accorded to forum and choice of law clauses. Bonny and Richards both involve suits between plaintiffs who are United States citizens and the English insurance market, Lloyds of London.  In both cases, the plaintiffs signed contracts containing forum selection clauses designating British courts and choice of law clauses designating English law.  Bonny, 3 F.3d at 158-159; Richards, 135 F.3d at 1291-1292.  In both cases, the plaintiffs sought to invalidate the forum selection and choice of law provisions on the grounds the choice of law provisions violate the strong public policies of the country where the suit is brought (United States, in these cases) as expressed in the anti-waiver provisions of the United States Securities Acts of 1933 and 1934.  Bonny, 3 F.3d at 159; Richards, 135 F.3d at 1294.

The Richards court recognized that the Seventh Circuit in Bonny had expressed concerns over enforcement of choice of law and choice of forum provisions that effectively waived statutory provisions in the securities laws, but ultimately determined the choice of law and choice of forum provisions were enforceable.  Richards, 135 F.3d at 1294.  The Seventh Circuit in Bonny reached its decision by weighing the strength of the public policy disfavoring waiver of rights under securities laws against the strength of the public policy favoring enforcement of choice of forum and choice of law provisions in international agreements.  The weighing was done in light of the assessed ability of courts in the forum selected by the contract to vindicate the rights the waiving party  would have had under the laws of plaintiff's preferred forum; that forum being the United States in the cases of Richards and Bonny.  The Bonny court reasoned that, since the courts and laws of England provided most, if not all, of the protections afforded by United States securities laws, the balance tipped in favor of enforcement of the choice of law and forum clauses.  Bonny, 3 F.3d at 160.

The Richards court relied more directly on an interpretation of the holding of the Supreme Court in Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974) to find that

20

enforcement of forum selection and choice of law provisions of international contracts had been endorsed by the Supreme Court in the specific context of contracts that implicated United States securities statutes. Richards, 135 F.3d at 1295-1296. Although the Richards court did not appear to expressly go through the weighing process that was evident in Bonny, the Richards court impliedly recognized that weighing process by noting that their level of scrutiny would have been different had there been a finding that English law was so deficient as to deprive the plaintiff of any reasonable recourse. Richards, 135 F.3d at 1296.

Applying the analytical framework set forth in Bonny as impliedly endorsed by the Ninth Circuit in Richards, the court must reach the conclusion that the choice of law and choice of forum clauses of the distributorship Agreement must be given full effect. First, when the strength of the public policy of giving effect to choice of law and choice forum clauses as expressed in Bremen and its progeny is weighed against the strength of the public policy against the enforcement of such clauses as expressed in Decree 1038-A, the balance clearly tips in favor of enforcement of the choice of forum and choice of law clauses in the distributorship Agreement. As noted, Ecuador has indicated the public policy strength of Decree 1038-A by repealing it. Further, Andina seeks to invoke the protections that Decree 1038-A affords so that it can reap damage awards that are out of all proportion to any reasonable notion of damages and to engage in procedural gamesmanship. These are not protections that can be held to promote any legitimate public policy. Andina offers no rational basis to support the notion that taking unfair advantage of foreign trading partners is a legitimate strong public policy.

Second, when the balance of the strengths of the competing public policies is weighed in light of the availability of adequate legal recourse in the forum where the suit is brought (here, in Ecuador), the scale tips even further in favor of enforcement of the contractually agreed upon choice of forum and choice of law. By invoking the *curador dativa* process, by invoking a summary adjudication procedure that offers little or no opportunity for meaningful

exercise of procedural rights, and by ignoring agreed-upon procedures for service of process, Andina has demonstrated that the procedures it was able to invoke there were sufficiently deficient to effectively deny Gallo basic due process rights.

This court, following Bremen, Richards and Bonny concludes that Gallo is entitled to the full enforcement of the forum selection and the choice of law clauses in the distributorship Agreement. The court reaches this conclusion irrespective of whether the repeal of Ecuadorian Decree 1038-A did or did not have retroactive effect. Decree 1038-A is, in other words, irrelevant to the issues that are raised by the motion and counter motion here under consideration. To the extent Andina argues that Decree 1038-A relieves Andina from its contractual obligation to litigate disputes arising out of the Agreement in California under California law, such arguments will be rejected without further analysis. Likewise, to the extent Andina argues that Decree 1038-A is "applicable law" under the Agreement, that argument is rejected without further analysis.

**III. Gallo's Claim for Declaratory Relief**

Gallo's first claim for relief seeks judicial declaration of Gallo's rights under the that are in dispute as a result of the Ecuador action. Specifically, Gallo requests the court declare that:

1. The choice of forum provision of the distributorship Agreement that specified either Stanislaus County Superior Court or the Eastern District of California is enforceable and binding on the Andina and Gallo;

2. The choice of law provision of the Agreement that designates California law as controlling is enforceable and binding on the parties;

3. Pursuant to the Agreement, CT corporation is the designated agent for service of process for both Andina and Gallo in any dispute between the parties;

4. By filing the Ecuador action, Andina violated the forum selection and choice of law provisions of the Agreement;

5. The Agreement provides that Andina was and is a non-exclusive distributor for Gallo in Ecuador; and,

6. Gallo did not breach the 1987 Agreement.

22

"The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.  Such intent is to be inferred, if possible, solely from the written provisions of the contract.  If contractual language is clear and explicit, it governs."  Westoil Terminals Co. V. Industrial Indemnity Co., 110 Cal.App. 4th 139, 145-146 (2003).  The choice of law and choice of forum provisions of the Agreement are clear and explicit and therefore speak for themselves.  Andina, in its response to Gallo's statement of undisputed material facts, admits that paragraph 8 of the Agreement provides ". . . any cause of action arising between the parties, whether under the Agreement , or otherwise, shall be brought only in a Court having jurisdiction and venue at the home office of Gallo . . . ."  Likewise, Andina admits that paragraph 8 of the Agreement provides, with respect to choice of law, that the Agreement is ". . . entered into under the laws of California and shall be construed thereunder . . . ."

Andina, in its opposition to Gallo's claim for declaratory judgment on the issue of whether the choice of law and choice of forum provisions of the Agreement are binding and enforceable, argues that Ecuadorian Decree No. 1038-A renders such choice of law and forum clauses invalid.  As previously discussed, the Ninth Circuit's May 1 Opinion rejects Andina's argument.  Whatever Decree No. 1038-A may have provided at the time or may provide at this time is irrelevant.  The parties agreed to litigate any disputes arising under the Agreement to be litigated in California under California law.  This court is duty-bound to give effect to that agreement.

Similarly, Andina admits the Agreement clearly and unambiguously provides that CT Corporation is designated agent for service of process for both Gallo and Andina for disputes arising under the Agreement.  Again, the court is bound to give effect to the intent of the parties as reflected in the unambiguous language of the Agreement.  To the extent Andina argues Decree No. 1038-A relieves it of any obligation to use CT Corporation for service of process, that argument is rejected.

Gallo next seeks declaratory relief on the issue of whether Andina breached the terms of the Agreement by filing the Ecuador action.  As previously discussed, Andina admits the Agreement contained the choice of law and choice of forum provisions and admits it executed the Agreement.  Andina also admits it commenced the Ecuador action in contravention of the plain terms of the Agreement that specified California as the forum and California law as the governing law.  Therefore, absent a valid defense, Andina breached the Agreement by instituting the Ecuador action.

Andina does not dispute the factual basis of Gallo's claim of breach.  Rather, Andina asserts three defenses that challenge the enforceability of the Agreement.  First, Andina contends Gallo breached its duty to Andina first by selling directly to Super Maxi, Ecuador's largest supermarket chain and Andina's biggest customer.  Second Andina contends Ecuadorian Decree No. 1038-A rendered invalid the forum selection and choice of law provisions of the Agreement and that the subsequent repeal of the decree in 1997 did not reach back in time to render the invalidated clauses valid.  Third, Andina asserts defenses to formation of the contract including overweening, unconscionability and adhesion contract.

The court has already considered and rejected Andina's contentions that Ecuadorian Decree No. 1038-A rendered invalid the forum selection and choice of law provisions of the Agreement and that the Agreement is not enforceable because the Agreement was the product of overweening or unconscionability.  As to the allegation of Gallo's breach, it is elementary that, whether or not Gallo breached the contract by selling wine directly to Super Maxi, that breach, if any, cannot be invoked by Andina as a defense to Gallo's claim that Andina breached the Agreement by suing Gallo in Ecuador under Ecuadorian law.  If Andina wishes to vindicate its claim that Gallo breached the Agreement, Andina is bound by the Agreement to assert that claim in California under California law.  To allow otherwise would be to render invalid every forum selection clause where breach is alleged by the party located in a forum that was not agreed upon.

24

Whatever breach Gallo may or may not have committed, the court concludes that Andina breached the Agreement by bringing its suit in Ecuador and by serving process in a manner other than that provided by the Agreement.

As to Gallo's motion that it be granted summary judgment on its claim that the Agreement provided that Andina was a non-exclusive distributor of Gallo wines in Ecuador, the court finds that the plain language of the Agreement so states. This of course does not completely dispose of the issue of whether Gallo is free under California law to sell directly to Andina's customer. However, for purposes of Gallo's request for declaratory relief that Andina was a non-exclusive distributor, that relief will be granted.

Gallo's final claim for declaratory relief asks the court to determine that Gallo did not breach the Agreement by any of the three acts alleged by Andina. Andina alleged in its action in Ecuador that Gallo breached the agreement by: (1) selling wine directly to the grocery chain Super Maxi who had been Andina's biggest customer; (2) by delaying shipments of wine on three occasions, and (3) by raising the prices or overcharging on its wines.

In its opposition to Gallo's motion, Andina admitted those undisputed facts alleged by Gallo that together are sufficient to support a finding that the so-called delays in shipment that Andina had previously alleged were delays were not breaches of the Agreement, but were instead part of the routine process of receipt, acknowledgment of, and preparation of individual orders for shipment of wine. So far as the court can determine, Andina does not oppose Gallo's arguments that the delays in shipments 2003/7GW, 2003/8GW, and 2003/12GW/13GW were not delays at all but represented extended negotiations over the individual shipment contracts involving matters of labeling. Andina does not oppose Gallo's contention there was no breach of the Agreement as a result of any of these "delays" or "extended negotiations." Since Gallo has carried its initial burden to demonstrate it is entitled to judgment as a matter of law, and Andina has not carried its burden to raise a

triable issue of material fact, the court will find that Gallo did not breach the Agreement as a result of any alleged delays in shipment of wine.

Similarly, Andina admits all undisputed material facts proffered by Gallo to support Gallo's contention that the raise in wine prices in 2004 did not breach the Agreement.  Nor did Andina put forward any argument in opposition to Gallo's contention that the rise in prices did not constitute a breach of the agreement.  As above, the court finds Gallo has carried its burden to demonstrate it is entitled to summary judgment on this issue and Andina has not raised a triable issue of material fact.  The court will therefore find that Gallo did not breach the Agreement by raising prices in 2004.

Last, Gallo contends that it did not breach the Agreement by selling wine directly to Super Maxi, Andina's largest customer.  To support its claim, Gallo points to the plain language of the Agreement that provides that Andina is a non-exclusive distributor of Gallo products, and that Gallo had every right to sell its wines to any other party of its choosing, including Andina's customers.  Andina's opposition is lengthy, impassioned, and unfocused.  To the best of the court's ability to decode Andina's opposition, it invokes three lines of argument.  First, Andina alleges Gallo's sale to Supermaxi breached the Agreement by preventing or hindering Andina's performance on the Agreement.  Second, Andina claims the clause in the Agreement that subjects the Agreement to "applicable law" means that the provision in Ecuadorian Decree 1038-A  applies to prevent Gallo from impairing the relationship between a distributor of a foreign product and the distributors customers.  Third, Andina alleges somewhat obliquely that Gallo's acts amount to tortious interference with Andina's business opportunity.  Andina's arguments fail to raise triable issues of fact.

Andina's argument that Gallo's actions prevented or hindered Andina's performance under the agreement fails because the Agreement does not require Andina to perform in a way that would be hindered or prevented by Gallo's sale of wine directly to Supermaxi.  The Agreement requires Andina to submit orders to Gallo in a certain format and to pay for the

wines shipped under specified terms, but the Agreement has no provisions requiring Andina to sell the wine, or to sell any particular amount of wine to any particular customer.  Since the amount of wine Andina sells or the customers to whom Andina sells its wine are not elements of performance under the Agreement, Gallo's sale of wine directly to Supermaxi could not have impaired Andina's performance.

Andina's invocation of Ecuadorian Decree 1038-A is rejected because the choice of law provision of the Agreement is, as previously discussed, fully enforceable and renders Ecuadorian law irrelevant insofar as Ecuadorian law might be invoked for purposes of determining compliance with the terms of the Agreement.

Andina's claim of interference is somewhat confusing.  Although Andina alludes to Gallo's conduct as constituting tortious interference with Andina's relationship with Supermaxi, nowhere does Andina set forth any legal framework for such a claim.  Andina has not alleged tortious interference as a counterclaim and has cited no statutory or case law to indicate the elements of such a claim under California law.  Finally, Andina has cited no authority to support the implied contention that conduct amounting to a producer's interference with a wholesaler's relationship with a third party purchaser also amounts to breach of a contract for sale of goods between the producer and wholesaler.

Since Gallo has made its required initial showing there remains no triable issue of material fact on its claim that it did not breach the Agreement, Andina has the burden to establish that such a triable issue of fact remains.  Andina cannot carry this burden by simply invoking the name of a defense or a tort and leave it to the court to figure out how that tort or defense might translate into a triable issue of fact.  Andina's argument is rejected for lack of legal support.

The court concludes that summary judgement is appropriate as to Gallo's first claim for declaratory relief as to all individual issues listed above.

**IV.  Gallo's Fourth Claim for Relief for Andina's Breach of Contract**

As previously discussed, the court finds Andina breached the distributorship Agreement with Gallo by bringing its action in Ecuador in violation of the forum selection clause of the Agreement, and by using means for service of process that were other than the means provided by the Agreement.  The court has also found that Andina has failed to raise a triable issue of material fact as to any defense to Gallo's claim for breach.  The court therefore finds Andina is liable to Gallo for the expenses Gallo incurred as a result of its participation in the Ecuador action.

**V. Permanent Injunction**

Gallo contends the legal standard for issuance of permanent injunctive relief is the same as for a preliminary injunction, except that actual success on the merits must be shown rather than a likelihood of success on the merits.  Sierra Club v. Penfold, 857 F.2d 1307, 1318 (9th Cir. 1988).  The court is somewhat reluctant to accept this legal standard since the request for permanent injunction in question is specifically for a permanent anti-suit injunction.  As the Ninth Circuit pointed out in Gallo, where the issue is one of anti-suit injunction, the applicant need not meet the normal test for the granting of a preliminary injunction; that is, the likelihood of success on the merits.  Rather, the applicant "need only demonstrate that the factors specific to an anti-suit injunction weigh in favor of granting the injunction.  For purposes of this action we may rely on any of the [. . .] factors[1] [set forth in Unterweser Reederei Gmbh, 428 F.2d 888, 896 (5th Cir. 1970)]if it applies to the case and if the impact on comity is tolerable."  Gallo, 446 F.3d at 991.  Applying these factors, the court has already determined enjoining the Ecuador action does not frustrate a legitimate policy of the forum issuing the injunction.  As well, the Ninth Circuit in the Gallo decision found

---

[1]     Under Unterweser, a "foreign litigation may be enjoined when it would (1) frustrate a policy of the forum issuing the injunction; (2) be vexatious or oppressive; (3) threaten the issuing court's *in rem* or *quasi in rem* jurisdiction; or (4) where the proceedings prejudice other equitable considerations."  Gallo, 446 F.3d at 990 (quoting Seattle Totems Hockey Club, Inc. v. Nat'l Hockey League, 652 F.2d 852, 855 (9th Cir. 1981)).

Andina's Ecuador action was vexatious and oppressive.  Concerns about *in rem* or *quasi in rem* jurisdiction do not apply in this case.  These considerations leave the court only to consider other equitable considerations.

Gallo alleges it will suffer possible substantial prejudice if Andina is allowed to proceed in the Ecuador action Andina could conceivably obtain a judgment against Gallo for some 70 + million dollars, which Andina could shop to any of the myriad of countries where Gallo does business.  Although the chances of this seem relatively small at present, the court agrees the burden on Gallo from such a judgment would be substantial.  Andina, on the other hand would suffer relatively little prejudice from the permanent imposition of an anti-suit injunction because Andina, as previously discussed, has no right to prosecute the action in Ecuador and would therefore would suffer no loss of protectable rights.  On the other hand Andina should not be enjoined so completely as to be prevented from extricating itself from the proceedings in Ecuador if it can save money thereby.

THEREFORE, in consideration of the foregoing discussion, it is hereby ORDERED that:

1.    Gallo's motion for declaratory relief is hereby GRANTED as follows:

    A.    the court DECLARES the forum selection clause as set forth at ¶ 8 of the 1987 Agreement is binding and enforceable;

    B.    the court DECLARES the choice of law provision set forth in the1987 Agreement designating California law as the law governing the Agreement is binding and enforceable;

    C.    in accordance with the terms of the 1987 Agreement, the court DECLARES CT corporation is the agent designated for service of process for both Gallo and Andina for any disputes arising out of the Agreement;

    D.    the court DECLARES Andina violated the 1987 Agreement by bring and

prosecuting the Ecuador action and violated the provisions of the 1987

Agreement designating CT corporation as the agent for service of process;

E.     the court DECLARES that, pursuant to the 1987 Agreement, Andina was/is an

non-exclusive distributor of Gallo products in Ecuador; and,

F.     the court DECLARES Gallo did not breach the 1987 Agreement.

2.     Gallo's motion for summary judgment as to the second claim for relief for abuse of

process is DENIED.

3.     Gallo's motion for summary judgment as to the third claim for relief for unfair

business practices under California law is DENIED.

4.     Gallo's motion for summary judgment as to the fourth claim for relief for breach of

contract is GRANTED.  Gallo shall file and serve an itemized schedule reflecting its

costs resulting from its defense in the Ecuador action not later that two weeks from

the date of service of this order.  Andina may file a response to Gallo's schedule of

expenses not later than two weeks from the date of service of Gallo's schedule of

expenses.  Alternatively, the parties may submit a joint statement of Gallo's costs not

later than three weeks from the date of service of this order.

5.     Gallo shall submit a proposed order for permanent injunction of the Ecuador action

not later than two weeks from the date of service of this order.  Any such proposed

order for permanent injunctive relief shall not prevent Andina from petitioning the

appropriate Ecuadorian court for voluntary dismissal of the Ecuador action, provided

such dismissal is with prejudice.


IT IS SO ORDERED.

**Dated:   July 24, 2006**                  **/s/ Anthony W. Ishii**
0m8i78                              **UNITED STATES DISTRICT JUDGE**

30